**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald J. CESTNIK, Defendant–
Appellant.**

No. 93–8016.

United States Court of Appeals,
Tenth Circuit.

Sept. 28, 1994.

John R. Barksdale (Richard A. Stacy, U.S. Atty., Casper, WY, was with him on the brief), for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and SAM *, District Judge.

TACHA, Circuit Judge.

A jury found defendant Ronald J. Cestnik guilty on eight counts of a multi-count indictment involving the distribution of marijuana. Defendant was convicted in count I of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B)(vii), 846; in count II of conspiracy to launder money in violation of 18 U.S.C. § 371; in counts III through VI of aiding and abetting money laundering in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i); in count VIII of distributing a controlled substance to a person under 21 in violation of 21 U.S.C. §§ 841(a)(1), 859(a); and in count XII of engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848. Defendant was sentenced to 235 months for counts I and VIII, 60 months for counts II through VI, and 240 months for count XII, with each sentence running concurrently.

Defendant appeals his conviction on four grounds. He asserts that the trial court erred in admitting into evidence Western Union "to-send-money" forms, computer-generated money transfer records, and various motel records. He also contends that the evidence presented at trial was insufficient to sustain his CCE conviction. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

### I. "To–Send–Money" Forms

We first address whether the trial court erred in admitting the "to-send-money" forms. Evidentiary rulings are committed to the discretion of the trial court, and we review them only for abuse of discretion. *United States v. Zimmerman,* 943 F.2d 1204, 1211 (10th Cir.1991). Our review is even more deferential where the evidentiary ruling concerns the admissibility of what is

Tom Sedar, Casper, WY, for defendant-appellant.

* The Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation.

claimed to be hearsay evidence. *United States v. Emmons*, 24 F.3d 1210, 1216 (10th Cir.1994). Finally, we consider the record as a whole in reviewing evidentiary rulings. *Boren v. Sable*, 887 F.2d 1032, 1034 (10th Cir.1989).

At trial, the government introduced more than sixty Western Union "to-send-money" forms into evidence to support its charges that defendant laundered money and engaged in a continuing criminal enterprise. Each of the forms states that a substantial sum, usually between $1,000 and $2,500, was wired from Wyoming to Laredo, Texas. The forms do not reveal defendant's name as the sender but instead contain several other names, such as "Jim Simms" and "Bill Johnson," which the government claimed were aliases of defendant. The government introduced additional evidence linking these aliases to defendant.

A Western Union "to-send-money" form consists of two distinct sides. The information contained on the right side is compiled by a Western Union agent. It lists the name of the agency conducting the transfer, the date of the transfer, a ten-digit money transfer control number, and the amount of the transfer. The government used the control number to tie the "to-send-money" forms to computer-generated money transfer records and canceled checks issued by Western Union. These documents, in turn, reveal the recipient of the transfer, where the money was received, and the place from which the money was sent.

The right sides of the "to-send-money" forms constituted hearsay as introduced at trial; they are out-of-court statements that were offered by the government for the truth of the matter asserted, namely that a particular amount of money was transferred on a specific date. The forms were nevertheless properly admitted if they fell under the business records exception. Rule 803(6) of the Federal Rules of Evidence states that business records will not be excluded under the hearsay rule if they meet the following criteria:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

To support the introduction of the forms under this exception, the government called witness Jerry Arrendale, Chief Compliance Officer and Custodian of Records for Western Union. Mr. Arrendale described the customary procedure Western Union agents follow in entering the information onto the "to-send-money" forms and how a unique ten-digit control number is assigned to each transfer. He identified several of the government's exhibits as Western Union forms and testified that the information is transcribed by Western Union agents in the normal course of business.

We find this testimony sufficient for the trial court to have concluded that the right sides of the "to-send-money" forms satisfied the requirements of Rule 803(6). The trial court did not abuse its discretion in ruling that the right sides of the documents were admissible business records.

The left sides of the "to-send-money" forms present a more vexing problem. The left side of a "to-send-money" form contains space for the sender to write in his or her name, address, and phone number, as well as the name of the intended recipient. The controversy here concerns the senders' names. Mr. Arrendale testified that Western Union agents do not verify the information filled out by the sender unless the transaction exceeds $10,000.[1] Defendant therefore contends that the senders' names do not satisfy the requirements of Rule 803(6) and were inadmissible.

---

1. Each of the challenged forms involve transfers of less than $10,000.

We agree that the senders' names were not admissible under the business records exception to the hearsay rule. As this court explained in *United States v. McIntyre*, 997 F.2d 687 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994), information included in a business record that is provided by a customer may still satisfy the requirements of Rule 803(6) "[i]f the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person." *Id.* —— U.S. at ——, 114 S.Ct. at 700; *see also Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1979) (requiring "indicia of reliability"). In *McIntyre*, we listed two ways to demonstrate this "guarantee[ ] of trustworthiness": (1) proof that the business has a policy of verifying patrons' identities by examining their credit cards, driver's licenses, or other forms of identification; or (2) proof that the business possesses "a sufficient self-interest in the accuracy of the [record]" to justify an inference of trustworthiness. 997 F.2d at 700. Here, however, neither "indicia of reliability" is present. Western Union agents did not verify senders' identifications, and nothing else in the record indicates that Western Union had a sufficiently compelling self-interest in ensuring the accuracy of information filled out by its customers to justify an inference of reliability.

But a document need not meet the requirements of Rule 803(6)—or any other exception to the hearsay rule—if it is non-hearsay. A document can be hearsay only when it is offered to prove the truth of the matter asserted. *See* Fed.R.Evid. 801(c).[2] That is, a document that is hearsay when offered to prove its truth will not be excluded under the hearsay rule if offered for some other purpose. *See United States v. Bowser*, 941 F.2d 1019, 1021 (10th Cir.1991) (testimony by officer that informant said that defendant carried a gun was admissible not to prove that defendant carried a gun but "to explain the officer's aggressive conduct toward the defendant").

In *McIntyre*, the government offered the names on "to-send-money" forms for their truth—to show that the sender named on the form, or someone claiming to have the name on the form, actually sent the money[3] —and we therefore held the names inadmissible. 997 F.2d at 701–02; *see also United States v. Jefferson*, 925 F.2d 1242, 1253 (10th Cir.1991) (holding pager bills inadmissible to show that named individual actually purchased pager services). Here, in contrast, the government offered the senders' names not to prove the identity of the sender but as circumstantial evidence linking the false names to the money transfers. The government then introduced supplemental evidence to prove that the fictional names were the defendant's aliases and that it was therefore the defendant who actually transferred the money.[4] Accordingly, the government con-

---

2. Rule 801(c) states: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

3. We reiterate our holding in *McIntyre* that there is "no distinction" between offering a motel record or "to-send-money" form to prove that the named individual herself registered at the motel or sent money, and offering it "to prove that someone claiming to have the same name" registered at the motel or sent money. 997 F.2d at 699 n. 9. *Contra United States v. Lieberman*, 637 F.2d 95, 101 (2d Cir.1980). We held that both constitute hearsay because both are essentially being offered for their truth. *Id.* Our concern in *McIntyre* was that offering an asserted identity to prove that the named individual took the action in question, or merely to prove that someone claiming to be the named individual took the action in question, was simply an artificial, semantic distinction that factfinders would likely find indistinguishable. That concern is not pres-

ent here, where the asserted name is false and is clearly being offered for a purpose other than to prove the sender's identity.

4. The record is replete with testimony that defendant sent money orders in the furtherance of the drug operation and that he used the aliases listed on the "to-send-money" forms. Government witness Miguel Montemayor testified that defendant frequently wired money to him in Texas for him to purchase drugs. Joseph Newman testified that defendant wired money to Texas using false names, including the alias of Bill Johnson, on several occasions. Jim Robinson stated that defendant directed him to send money orders using aliases, and Agent Mike Artel testified that he observed defendant complete a money transfer at a Western Union office in Wyoming. Finally, Agent Steve Woodson testified that defendant himself admitted to sending money orders on several occasions using the aliases of Jim Simms and Bill Johnson, among others, to send

tends, the senders' names were nonhearsay.

Because other evidence introduced by the government sufficiently demonstrated that the names were fictitious and that the sender's assertions that "I'm Jim Simms" and "I'm Bill Johnson" were intentional falsehoods, we agree that the names were nonhearsay because they were not offered for their truth. *See United States v. Peveto*, 881 F.2d 844, 853–84 (10th Cir.) (traffic ticket was inadmissible for truth of the matters asserted therein but admissible to tie defendant to the vehicle), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Ashby*, 864 F.2d 690, 693 (10th Cir.1988) (title to car, although inadmissible to prove defendant was owner, was admissible as circumstantial evidence tying defendant to the car), *cert. denied*, 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990). Because the government did not offer the forms to prove the truth of the assertions made by the senders, *McIntyre* is distinguishable, and the trial court did not abuse its discretion in concluding that the documents were admissible in their entirety. We therefore find that the trial court's admission of the fictitious names on the "to-send-forms" did not constitute reversible error.[5]

## II. Computer–Generated Money Transfer Records

To connect the "to-send-money" forms to the recipients of the transfers, the government introduced computer-generated Western Union money transfer records. The transfer records are computer printouts that state the origin and amount of the transfer, the names of the recipient and sender, and the transfer control number. The government also introduced cancelled checks with matching transfer control numbers to corroborate the identity of the recipient and establish the location of receipt.

■ Defendant first argues that the computer-generated money transfer records were inadmissible for the same reason that he contends the "to-send-money" forms should have been excluded: The records reveal the names of the senders, information that was not verified by Western Union agents in the normal course of business. This argument misses the mark. The government introduced the money transfer records not to prove the identity of the senders but to link the "to-send-money" forms to other information, such as the amount and origin of the transfer and the identity of the recipients. The records were therefore admissible for the purpose for which they were introduced. If defendant objected to other portions of the money transfer records, he could have requested a limiting instruction or a redaction of the senders' names. The record reveals, however, that he made no such request. Moreover, since we have already concluded that the names of the senders appearing on the "to-send-money" forms are not hearsay, their transcriptions into the computer transfer records by Western Union agents in the normal course of business are not hearsay either.

■ Defendant next contends that the government failed to lay the proper foundation for the money transfer records to be admissible as business records under Rule 803(6). A computer printout is admissible under Rule 803(6), as with any other form of business record, if the offeror establishes a sufficient foundation in the record for its introduction. *United States v. Hayes*, 861 F.2d 1225, 1228 (10th Cir.1988). " 'Computer business records are admissible if (1) they are kept pursuant to a routine procedure designed to assure their accuracy, (2) they

---

wire transfers from Wyoming to Texas in furtherance of the drug operation.

5. This finding of nonhearsay is a limited one. Here, the record was clear that the defendant's inaccurate self-identification on the "to-send-money" forms was the product of defendant's active attempt to mislead. The defendant's assertion that "I'm Jim Simms" or "I'm Bill Johnson" was not intended to, and could not, accurately reflect his identity. It therefore could not

be offered for its truth. This argument would not hold, however, in cases where an individual simply uses a nickname or a commonly identified monogram. In those instances, the self-identification could indeed accurately reflect who the individual declarant is, and would therefore still be considered hearsay offered for its truth, despite the fact that the asserted name differs from the declarant's true, given name.

are created for motives that tend to assure accuracy (*e.g.,* not including those prepared for litigation), and (3) they are not themselves mere accumulations of hearsay.'" *United States v. Hernandez,* 913 F.2d 1506, 1512 (10th Cir.1990) (quoting *Capital Marine Supply, Inc. v. M/V Roland Thomas, II,* 719 F.2d 104, 106 (5th Cir.1983)), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991).

▇ Mr. Arrendale testified concerning how Western Union creates computer records of its money transfers. He stated that, at the time of each transfer, the Western Union agent at the sending location either directly inputs the information into a computer or reports it contemporaneously over a telephone to a Western Union employee at the company's central office. In either case, the information is entered into Western Union's computer system at the time of the transfer, and a ten-digit transfer number is assigned to the transaction. Mr. Arrendale further stated that the records are created in the normal course of business and that it is the regular practice of Western Union agents to verify the identity of the transfer recipients. Finally, Mr. Arrendale identified several of the transfers introduced by the government as Western Union transfer records.

We find that Mr. Arrendale's testimony laid a sufficient foundation for the government's introduction of the wire transfer records under Rule 803(6). The trial court did not abuse its discretion in admitting the transfer records into evidence.

### III. Motel Records

Defendant next contends that motel records introduced by the government were inadmissible hearsay. The government offered records from various motels in Texas to bolster its proof that defendant had engaged in a continuing criminal enterprise. Each motel record contains the name of the guest who paid for the room, the name and location of the motel, and the dates of the guest's stay. The name of the guest was provided by the guest himself. The government's witness testifying as the custodian of the records, Mr. Curt Greer, admitted that he did not know whether, at the time these records

were made, it was the regular practice of the motel to verify the identity of its customers.

Defendant asserts that, because the government failed to establish that it was the regular practice of the motel to verify the identity of its guests, or that a motel clerk verified the guests' identities on these particular occasions, the records did not satisfy the requirements of Rule 803(6). Defendant relies on our decision in *McIntyre,* 997 F.2d at 687, where we ruled similar motel receipts inadmissible. Because "there was no evidence either that the identity of the individual ... was actually checked or that there was a policy to do so," the receipts in *McIntyre* did not qualify as business records and were therefore inadmissible hearsay evidence. *Id.* at 700.

▇ Even if we assume that the motel records in this case were inadmissible, our inquiry is not complete. A trial court's admission of inadmissible evidence will disturb a defendant's conviction only if the error was not harmless. Fed.R.Crim.P. 52(a). A nonconstitutional error, such as the erroneous admission of evidence under a well-established exception to the hearsay rule, "is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) (en banc) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)); *see also United States v. Acosta–Ballardo,* 8 F.3d 1532, 1536 (10th Cir.1993). Thus, the question presented here is whether the motel records "'substantially influenced' the jury's verdict in the context of the entire case." *United States v. Short,* 947 F.2d 1445, 1455 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).

▇ The government's purpose in introducing the motel records was to substantiate its charge that defendant had engaged in a continuing criminal enterprise. As we discuss below, the motel records were purely

cumulative with respect to the government's proof that defendant was guilty on the CCE charge. The trial record contains ample evidence outside of the motel records to sustain defendant's CCE conviction. We therefore find that the admission of the motel records did not substantially influence the jury's verdict. Any error that the trial court may have committed in allowing them into evidence was harmless.

## IV. Sufficiency of Evidence for CCE Conviction

■ Finally, defendant argues that the evidence presented at trial by the government was insufficient to sustain his conviction under 21 U.S.C. § 848 for engaging in a continuing criminal enterprise (CCE). In reviewing the sufficiency of evidence to sustain a jury's guilty verdict, "we examine the evidence in the light most favorable to the Government in order to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt." *United States v. Kendall,* 766 F.2d 1426, 1431 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); *see also United States v. Anderson,* 981 F.2d 1560 (10th Cir.1992).

Section 848(c) states that an individual engages in a CCE when:

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies *a position of organizer,* a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

Defendant concedes that he is guilty of conspiracy to distribute marijuana, a felony

violation of this subchapter. Defendant asserts, however, that he did not occupy "a position of organizer, a supervisory position, or any other position of management" with respect to five other persons involved in the conspiracy. He also contends that he did not obtain "substantial income or resources" from the conspiracy.

■ Addressing the latter claim first, government witness Joseph Newman testified that defendant bought guns, a car, exercise equipment, a mobile home, gold chains, and an eighteen-wheel truck with proceeds from his drug operation. In addition, Agent Woodson testified that defendant boasted that every item in his home had been purchased with proceeds from his marijuana business. The record therefore clearly shows that defendant obtained substantial income from the criminal enterprise.

■ We next turn to the issue of whether defendant "organized," "supervised," or "managed" five other persons involved in the enterprise. The terms "organizer," "supervisor," and "manager" as used in section 848 are given their nontechnical, everyday meanings. *United States v. Jenkins,* 904 F.2d 549, 553 (10th Cir.1990), *cert. denied,* 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990). "[T]he defendant need not be the dominant organizer or manager of the enterprise; he need only occupy *some* managerial position with respect to five or more persons." *Id.* Moreover, the defendant need not organize, supervise, or manage five other persons simultaneously but merely at some point during the life of the criminal enterprise. *United States v. Smith,* 24 F.3d 1230, 1233 (1994).

■ In clarifying the language of section 848, we have stated that "[a]n organizer *arranges a number of people engaged in separate activities into an essentially orderly operation,*" *Smith,* 24 F.3d at 1233, and that "'a relationship of supervision is created when one person gives orders or directions to another person who carries them out,'" *United States v. Apodaca,* 843 F.2d 421, 426 (10th Cir.) (quoting *United States v. Strat-*

*ton,* 779 F.2d 820, 827 (2d Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986)) *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). Further, although "proof of a buyer-seller relationship alone is insufficient to establish a managerial role, additional evidence of formal or informal authority or responsibility respecting a purchaser's conduct may suffice." *Jenkins,* 904 F.2d at 553.

 In light of this guidance, we find that the record demonstrates sufficient evidence for a reasonable trier of fact to conclude that defendant occupied a position of organizer, supervisor, or manager respect to five other persons in the criminal enterprise—Miguel Montemayor, Michael Martin Hughes, Joseph Newman, Ken Hicks, and Jim Robinson. Miguel Montemayor testified that defendant was the only person to whom he sold drugs, that defendant paid for his expenses incurred in procuring marijuana, and that he and defendant prearranged where and when to meet for their transactions. Michael Martin Hughes testified that defendant would send him and Montemayor sums varying from "a few hundred to a few thousand" dollars to "sustain" them and help them in "paying bills." Joseph Newman testified that, although he and defendant acted as partners in the drug business, defendant was "in charge." Newman stated that defendant controlled the proceeds of their operation, defendant controlled most of the marijuana that they were selling, and that, when he and defendant ended their relationship, defendant kept all of the money and marijuana they had jointly obtained except for $5,000. Jim Robinson testified that defendant used Ken Hicks as his driver during his drug runs to Texas, and this testimony was corroborated by the statements of government witness Kent Clark. Finally, defendant concedes that he supervised and managed Jim Robinson in furtherance of the criminal enterprise.

Based on this evidence, a reasonable trier of fact could conclude that defendant orga-

nized, supervised, or managed at least five other persons involved in the criminal enterprise. The jury's verdict that defendant engaged in a CCE pursuant to 21 U.S.C. § 848 therefore must stand.

## V. Conclusion

In sum, we find that the trial court did not abuse its discretion in allowing the "to-send-money" orders and the computer-generated money transfers into evidence. We also find that, even if the motel records were inadmissible hearsay, any error in admitting them was harmless. Finally, the record reveals sufficient evidence to sustain a jury's guilty verdict for engaging in a CCE. For these reasons, the judgment of the trial court is **AFFIRMED.**