**UNITED STATES**

v.

**Ingrid ZAPATA, Defendant.**

**No. 02 CR. 1545(VM).**

United States District Court,
S.D. New York.

Feb. 10, 2005.

Mark A. Racanelli, United States Attorney, New York City, for Plaintiff.

Evan D. Prieston, Maurice H. Sercarz, Law Offices of Maurice H. Sercarz, Jerry L. Tritz, Anthony L. Ricco, Roger Bennet Adler, New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

The United States Attorney's Office for the Southern District of New York (the "Government") filed a motion *in limine* by letter dated January 21, 2005 to preclude the admission of a post-arrest statement made by Fabian Londono ("Londono"), an alleged co-conspirator of the defendant, Ingrid Zapata ("Zapata"). Zapata replied to the Government's motion by letter dated February 2, 2005 arguing that the statement was admissible under general principles of a defendant's right to a fair trial and Federal Rule of Evidence 807, the residual hearsay exception.

Zapata filed a motion *in limine* by letter dated January 28, 2005 seeking to prevent the Government from admitting into evidence certain records of a Western Union wire transfer. The Government responded to Zapata's motion by letters dated February 2, 2005 and February 4, 2005 asserting the admissibility of the documents under Federal Rule of Evidence 803(6), the so-called business records exception to the hearsay rule. The Court heard oral argument on the matter of the admissibility of the Western Union records on February 4, 2005. For the reasons set forth in the statement made by the Court on the record at the February 4, 2005 Hearing, and prior to the commencement of the trial on February 7, 2005, as further elaborated upon in the Statement of the Court which is attached hereto and incorporated herein, the Court grants the Government's motion to preclude the post-

arrest statement of Londono and grants in part and denies in part Zapata's motion to prevent the admission of the Western Union records. Accordingly, it is hereby

**ORDERED** that the motion of the United States Attorney's Office for the Southern District of New York (the "Government") to preclude the admission by defendant Ingrid Zapata ("Zapata") of the post-arrest statement of Fabian Londono is GRANTED; and it is further

**ORDERED** that the motion of Zapata to prevent the Government from admitting into evidence certain Western Union records is GRANTED IN PART, and is DE-NIED IN PART, in that the Western Union records may be admitted as non-hearsay, subject to a limiting instruction, not for the truth of the matters stated therein linking the wire transfer to defendant Ingrid Zapata, but rather for the limited purpose of showing that the recorded transaction occurred, and that it involved a person identified on the document as "Ingrid Zapata."

**SO ORDERED.**

### Statement of the Court Regarding Motions *In Limine*

### February 4 and February 7, 2005

The Court has received two *in limine* motions in the matter of *United States v. Zapata.* The first motion, brought by the United States Attorney's Office for the Southern District of New York (the "Government"), seeks to preclude the admission of a certain post-arrest statement made by an alleged co-conspirator of the defendant, Ingrid Zapata ("Zapata"). The second motion, brought by Zapata, seeks to prevent the admission of Western Union wire transfer documents. The first motion should be granted, as the post-arrest statements are inadmissible hearsay. The second motion should be granted in part, as the Western Union documents are admissible as non-hearsay, subject to a limiting

instruction, for the limited purpose of showing that the alleged Western Union wire transfer took place and that it was made by an individual claiming to be "Ingrid Zapata."

### I. STATEMENT OF FACTS

Zapata is charged with conspiring to distribute and possess with intent to distribute certain quantities of heroin. Her alleged role in the conspiracy was to transfer money for a drug transaction by (1) sending about $1,000 by wire transfer to Miami and (2) flying approximately $16,500 to Miami with her cousin, Carolina Rios ("Rios") who was also a co-conspirator.

When one of Zapata's alleged co-conspirators was arrested, he explained that he was involved in a narcotics transaction, but disclaimed any involvement by Zapata and Rios in the conspiracy. Zapata seeks to admit this statement under general principles governing a defendant's right to a fair trial and Federal Rule of Evidence 807, the so-called residual exception. Zapata has also indicated that she subpoenaed the co-conspirator who made the statement, Fabian Londono ("Londono"), and that he will testify at trial and be subject to cross-examination.

The Western Union records that the Government seeks to admit purport to show that an individual identified in a Western Union central document as "Ingrid Zapata" sent a wire transfer from Corona, New York on November 26, 2002 to "Pedro Duran" in "Any Where," Florida. The records that the Government seeks to admit are not the actual Western Union forms that it alleges Zapata filled out, but rather consist of a composite record created from the central Western Union computer system and copies of the front and back of the cancelled Western Union check issued in the alleged transaction made from "Ingrid Zapata" to "Pedro

Duran" (the "Western Union evidence").[1] The Government will seek to admit the records through the testimony of a records custodian from the Western Union headquarters. This custodian was not present when Zapata allegedly filled out the "To Send Money" form for the transaction at the Corona Western Union branch, and allegedly will testify only about what the documents show and the fact that the documents were kept in the ordinary course of business.

## II. STATEMENT OF LAW

### A. ADMISSIBILITY OF LONDONO'S POST–ARREST STATEMENT

#### 1. *Admissibility if Londono is Unavailable as a Witness*

Should Londono be unavailable as a witness at the time of Zapata's trial, the applicable hearsay exception under which Londono's post-arrest statement could be admitted is Federal Rule of Evidence 804(b)(3), Statement Against Interest ("Rule 804"). Rule 804 states, in pertinent part, that

> [t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness ... [a] statement which was at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indi-

cate the trustworthiness of the statement.

Fed.R.Evid. 804(b)(3).

■ The Court finds that the circumstances do not support the inference that Londono's statement was trustworthy, and therefore the statement cannot be admitted under Rule 804. First, Londono had personal reasons for trying to protect Zapata and Rios from liability—he was romantically involved with Rios and probably felt regret for involving the women in his scheme. Second, Londono did not make the statement in response to any direct questioning on the part of the Government, but volunteered the information while being questioned about his own conduct in the conspiracy. Finally, the Government notes in its letter to the Court that Rios pleaded guilty in this case to conspiring with Londono to distribute heroin, thus belying Londono's post-arrest assertions to the contrary.

■ Even if Londono's statement were admissible under the Rule, the parts of the statement concerning Zapata's involvement in the conspiracy would have to be excised because, as the Supreme Court held in *Williamson v. United States*, Rule 804(b)(3) only allows for the admission of the self-inculpatory portions of a hearsay statement. 512 U.S. 594, 599, 604, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The justification underlying the hearsay exception—that people "tend not to make self-inculpatory statements unless they believe them to be true"—does not extend to statements concerning the roles of other individuals in the alleged crime, even when combined with self-inculpatory remarks. *Id.* at 599–600, 114 S.Ct. 2431. Therefore, Londono's declaration that Zapata was not

---

1. The Government claimed at the February 4, 2005 Hearing that Western Union does not have any additional evidence of the transac-tion because of a company-wide policy to destroy all original docs in any transaction after six months.

involved in the conspiracy cannot be admitted under Rule 804. *See United States v. Marquez*, 462 F.2d 893, 895 (2d Cir. 1972) (holding that the statement of a co-conspirator was inadmissible under Rule 804 where the statement contained inculpatory remarks about the declarant and exculpatory remarks about the defendant because the declarant "merely sought to exculpate his friends, and the statement therefore lacks the inherent reliability which justifies the declaration against interest exception to the hearsay rule").

These cases serve to emphasize the plain language of the Rule, which states that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3). Given that the corroborating circumstances as stated above do not indicate the statement's trustworthiness, the statement cannot be admitted under Rule 804.

Zapata contends that the statement should be admitted for two reasons. (Letter from Zapata to the Court, dated February 2, 2005, at 2.) First, she argues that "evidentiary rules and privileges must yield to a defendant's right to a fair trial to produce evidence of an exculpatory nature, or which might raise reasonable doubt." (*Id.* (citing *Chambers v. Mississippi*, 405 U.S. 1205, 92 S.Ct. 754, 30 L.Ed.2d 773 (1972)[2] and *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).) Zapata's citations in support of her theory that this Court should expand the normal confines of the hearsay rule are inapposite. The cited references in *Chambers* concern the fact that the defendant was constrained in his ability to put on a defense because of archaic Mississippi rules pro-

hibiting a defendant from impeaching his own witness and from admitting statements against interest unless they were against the declarant's pecuniary interest. The Supreme Court found that these limitations deprived the defendant of a fair trial. *Chambers*, 410 U.S. at 295–303, 93 S.Ct. 1038. Zapata is not so constrained, nor does she explain the relevance of this decision to the circumstances of this case. *Davis* is similarly irrelevant, as that decision discussed a defendant's right to cross-examine witnesses. *Davis*, 415 U.S. at 318, 94 S.Ct. 1105.

■ Next, Zapata argues that Londono's statement is admissible under the residual exception to the hearsay rule, Federal Rule of Evidence 807 ("Rule 807"). Rule 807 states, in pertinent part, that

[a] statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will be best served by admission of the statement into evidence.

Fed.R.Evid. 807. Zapata's argument is unpersuasive. First, the admissibility of statements such as Londono's is governed by Rule 804, and thus, by the plain language of the Rule, Rule 807 does not apply. Furthermore, even if Rule 807 did apply, Londono's statement does not have any "circumstantial guarantees of trustworthiness" for the reasons stated above. Additionally, the statement is not more

---

**2.** The Court notes that the correct citation for the opinion referenced by Zapata is 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

probative on the issue of Zapata's involvement in the conspiracy than any other evidence that she can procure through reasonable efforts, as required under subsection (B) of Rule 807. Zapata has subpoenaed the declarant, Londono, to appear as a witness in her case. His testimony at trial under oath certainly would be more probative as to her alleged role in the conspiracy than a statement that he made years ago.

Therefore, the Court is not persuaded by Zapata's arguments in favor of admitting Londono's post-arrest statement. The statement is inadmissible hearsay and does not fall into any relevant hearsay exception.

### 2. Admissibility if Londono Appears as a Witness

■ Should Londono testify at trial, Zapata could move for the statement's admission under Federal Rule of Evidence 801(d)(1), Statements which are not hearsay, prior statement by witness ("Rule 801"). Rule 801 states, in pertinent part, that

> [a] statement is not hearsay if ... [t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, *and* was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

Fed.R.Evid. 801(d)(1) (emphasis added). Londono's statement, however, cannot be admitted under Rule 801. The statement does not meet the requirements for admission under subsection (A) because Londono did not make the statement while under oath at a trial, hearing or other proceeding—he made it during an interview with police after his arrest.

The statement also could not be admitted under subsection (B) of Rule 801. Even if circumstances arose such that admission of Londono's statement under this subsection was an issue, for example, if the Government accused Londono of trying to protect Zapata because she was his friend, the Supreme Court held in *Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), that "the consistent statements must have been made before the alleged influence, or motive to fabricate, arose" to be admissible under Rule 801(d)(1)(B). *Id.* at 158, 115 S.Ct. 696. As the Government points out in its letter to the Court, Londono's motive to fabricate at the time he made the prior consistent statement, after his arrest while explaining the crime to the police, was the same—he wanted to protect Zapata. In light of *Tome,* therefore, the statement would not be admissible under Rule 801.

The Government's case for the inadmissibility of Londono's post-arrest statement is compelling. Zapata has failed to present a viable basis for the admission for the statement. In addition, the Court's independent research has failed to uncover alternative grounds for its admission. Therefore, Londono's post-arrest statement cannot be introduced as evidence because it is inadmissible hearsay. The Government's motion to exclude the statement is granted.

### B. THE WESTERN UNION WIRE TRANSFER RECORDS

The Government seeks the admission of the Western Union records under the "business records" exception to the hearsay rule, Federal Rule of Evidence 803(6) ("Rule 803"), Records of Regularly Conducted Activity. Rule 803 states, in pertinent part, that

[a] memorandum, report, record, or data compilation, in any form, of acts [or] events ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness ... *unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.*

Fed.R.Evid. 803(6) (emphasis added). Regarding this problem of the source of the information contained in the business record, the Advisory Committee Notes to Rule 803 state that if

the supplier of the information does not act in the regular course [of business under a "duty of accuracy"], an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.

Fed.R.Evid. 803 advisory committee's note. This problem arises in the context of Western Union wire transfer records because the information identifying the sender and receiver of the wire transfer is given by an individual who is not acting in the regular course of business in providing that information. *See, e.g., United States v. Vigneau,* 187 F.3d 70, 74 (1st Cir.1999). Western Union "To Send Money" forms are handed by the sender of money to a Western Union agent after the sender completes the left side of the form by writing (1) the sender's name, address and telephone number; (2) the amount of the transfer; and (3) the intended recipient's name and location. The Western Union clerk then fills in the right side of the form with the clerk's

signature, date, amount of the transfer and fee, and a computer-generated control number; but at least in 1995, Western Union clerks did not require independent proof of the sender's identity. *Id.*

The composite central computer records being offered as evidence in this case present an additional problem in that those records constitute hearsay-within-hearsay because "Western Union's computer-generated records [are] based on those send forms[, and therefore] also contain unverified information provided by customers." *United States v. Pendergrass,* 47 F.3d 1166 (4th Cir.1995) (table text in 1995 WL 56673, at *5 (4th Cir.1995)).

Although the Second Circuit has not decided a case concerning the admissibility of Western Union wire transfer records, it has decided cases dealing with the problem of admitting evidence under the business records exception to the hearsay rule where the source of at least part of the information in the record was not acting in the regular course of business. In *United States v. Lieberman,* the Second Circuit considered the admissibility of hotel guest registration cards. 637 F.2d 95, 99–101 (2d Cir.1980). The lines on the hotel guest registration card showing the guest's name and address were filled in by the guest, and not by a hotel employee. *Id.* at 100. The Circuit Court held that the hotel guest card would not be admissible under the business records exception to prove the identity of the guest "unless the employee were able in some way to verify the information provided for example, by examining a credit card, driver's license or other form of identification. .... By the same token, however, if such verification is obtained by the employee, we see no reason why the guest card that has been filled in by the guest himself would not qualify as a business record and thus be admissible for

the truth of its statements." *Id.* at 101. Because, in *Lieberman*, the hotel employee did not verify any such information from the person who filled out the guest registration card, the court held that the card was not admissible under the business records exception. *Id.; see United States v. Reyes*, 157 F.3d 949, 951–53 (2d Cir.1998) (following *Lieberman* and admitting a prison logbook under the business records exception because the prison required every visitor to produce identification when signing into the book).

The Circuit, however, upheld the admission of the hotel guest card as non-hearsay, "simply to show that someone calling himself Robert D'Ambra registered in the hotel, laying a foundation for further evidence that from his room a call was made to Myron Lieberman's unpublished telephone number." *Lieberman*, 637 F.2d at 101 (internal citations omitted); *see United States v. Chin*, 371 F.3d 31, 38–39 (2d Cir.2004) (citing *Lieberman* and holding that certain credit card receipts should have been admitted into evidence for the limited purpose to show that someone calling themselves "Tin Yat Chin" made the purchases recorded in the receipts).[3] The court noted that, "[t]o the extent that the hotel registration card was admitted for non-hearsay purposes, Lieberman was entitled, if he requested, to a limiting instruction." *Id.*

Other circuits have considered cases involving facts similar to those before this Court and have cited *Lieberman* favorably for the proposition that Western Union "To Send Money" forms and any internal Western Union computer records created from those forms are not admissible under the business records exception unless the Western Union clerk verified the information provided by the sender by requiring the sender to produce some form of identification. *See Pendergrass*, 47 F.3d 1166, 1995 WL 56673, at *5 (4th Cir.) (holding that the send forms and computer generated documents from Western Union were not admissible under the business records exception unless the Western Union clerk verified the information provided, citing *Lieberman*); *United States v. McIntyre*, 997 F.2d 687, 701–702 (10th Cir.1993) (same); *see also United States v. Turnbull*, 213 F.3d 634 (4th Cir.2000) (table text in 2000 WL 524800, at *7–*8 (4th Cir. 2000)) (same, but not citing *Lieberman* for the proposition), *rev'd on other grounds*, 531 U.S. 1033, 121 S.Ct. 620, 148 L.Ed.2d 531 (2000); *Vigneau*, 187 F.3d at 77 (1st Cir.) (same, but not citing *Lieberman* for the proposition); *United States v. Arteaga*, 117 F.3d 388, 391–96 (9th Cir.1997) (same, but not citing *Lieberman* for the proposition); *United States v. Mitchell*, 49 F.3d 769, 777–79 (D.C.Cir.1995) (same, but not citing *Lieberman* for the proposition); *Cestnik*, 36 F.3d at 908 (10th Cir.) (same, but not citing *Lieberman* for the proposition).

Many of these courts have also followed the reasoning expressed by the Second Circuit that the records could be admitted for some other purpose than to prove the identity of the sender even if they were not verified by the Western Union clerk. In *Vigneau*, for example, the First Circuit noted in dicta that "[o]f course, in some situations, the statement by the 'outsider' reflected in the business record may be admissible not for its truth but for some other purpose," citing *Lieberman* in a footnote as an example of one such situation.

---

3. The Tenth Circuit in *United States v. Cestnik*, 36 F.3d 904 (10th Cir.1994), expressly rejected that Western Union send forms could be used for the purpose of proving that someone claiming to have the same name as the defendant sent the money and cited *Lieberman* as contrary authority. The Second Circuit has never addressed this split between the circuits, and *Cestnik* has never been cited in this circuit.

187 F.3d at 76; *accord Arteaga,* 117 F.3d at 396; *Pendergrass,* 1995 WL 56673, at *5.

Courts have also noted that where independent evidence is introduced to establish that the defendant, whose name is on the unverified send form as the sender, was the actual sender in the transaction, the send forms can be admitted into evidence as non-hearsay. *See, e.g., Turnbull,* 213 F.3d 634, 2000 WL 524800, at *8 n. 10 ("Had the Government introduced independent evidence (such as eyewitness testimony and handwriting exemplars) to establish that Turnbull was the actual sender in these transactions, the to-send forms would arguably be the admission of a party-opponent, and, therefore, non-hearsay."); *Vigneau,* 187 F.3d at 76 ("Possibly, the government could have argued as to Patrick Vigneau ... that other evidence of Patrick Vigneau's activities comprised circumstantial evidence that would permit a jury to conclude that he sent the specific forms bearing his name," citing Fed. R.Evid. 104(b)).

█ In this case, the transaction in question was in the amount of $920.00, and the Government concedes that Western Union did not check identification to send wire transfers in amounts under $1,000. Therefore, under *Lieberman,* the Western Union evidence cannot be admitted under the business records exception to the hearsay rule. However, as in *Lieberman,* the Western Union evidence can be admitted for the limited purpose of showing that a completed transaction occurred on the date in question and that it involved someone claiming to be "Ingrid Zapata." Admission for the purpose would be subject to a limiting instruction, should Zapata make such a request.

Zapata's arguments against the admissibility of the Western Union evidence do not persuade the Court to rule otherwise. Her contention that the fact that the Government cannot produce the original "To Send Money" forms should bar the admission of any other evidence concerning the transaction ignores Federal Rule of Evidence 1004, which states that "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if ... [a]ll originals ... have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed.R.Evid. 1004(1). The Court finds that the originals in this case were not destroyed in bad faith; rather, they were destroyed without the involvement of the Government as a part of an internal records retention policy at Western Union. Zapata's argument that the Western Union evidence should be excluded under Federal Rule of Evidence 403 is also unpersuasive. Any *unfair* prejudice that might result from the admission of this evidence does not substantially outweigh its probative value. The remaining arguments put forth by Zapata concern the weight that the evidence should be given, and do not effect the admissibility of the Western Union evidence.

Therefore, Zapata's motion *in limine* to exclude the Western Union evidence is granted in part, in that the evidence can be admitted for the non-hearsay purpose of showing that someone claiming to be "Ingrid Zapata" made the alleged transaction.