FILED
United States Court of Appeals
Tenth Circuit

March 10, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GREGORY DARIUS DIXON,
a/k/a Greedy,

Defendant-Appellant.

No. 07-1178
(D.C. No. 05-cr-404-REB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

---

Gregory Darius Dixon, a/k/a "Greedy," appeals his conviction for

conspiracy to possess with intent to distribute and to distribute cocaine and

methamphetamine. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

In May 2004, the Boulder County Drug Task Force began investigating Donald Jason Skinner, an individual identified as the head of a drug distribution organization referred to as the Skinner Drug Organization or SDO. On September 7, 2005, law enforcement officials executed an arrest warrant for Mr. Skinner and search warrants for multiple locations used by the SDO for drug distribution activities.

Further investigation and other arrests followed, including the arrest of Mr. Dixon. He and two other individuals were thereafter charged with conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846. During a four-day trial in January 2007, a handful of SDO members testified about their drug distribution activities and the activities of Mr. Dixon. The testimony demonstrated that between late 2004 and February 22, 2005, Mr. Dixon and SDO members cut, weighed, packaged, and distributed various quantities of methamphetamine and cocaine.

At the end of the government's case in chief, Mr. Dixon moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(a). The district court denied the motion and Mr. Dixon rested his case. The jury found him guilty of the crime charged, and he was sentenced to 144 months' imprisonment. This timely appeal, in which Mr. Dixon raises three issues challenging his conviction, followed.

**DISCUSSION**

**I.     Sufficiency of the Evidence**

Mr. Dixon first contends that the evidence presented at trial was insufficient to support the jury's verdict. "Whether the government presented sufficient evidence to support a conviction is a legal question we review *de novo*." *United States v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005). In so doing, we consider "the evidence in the light most favorable to the government, determining whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Almaraz*, 306 F.3d 1031, 1040 (10th Cir. 2002) (internal quotation marks omitted).

> To establish a conspiracy, the government was required to show: (1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, . . . (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent. This burden may be met by either direct or circumstantial evidence.

*United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (alteration in original) (internal citations and quotation marks omitted). Mr. Dixon does not specifically challenge the evidentiary support for any of the four essential elements of the crime of conviction. Instead, he argues that the government's evidence was insufficient because it consisted of the testimony of cooperating coconspirators who, in exchange for their testimony, were "paid handsomely . . . in the form of . . . reduced prison sentence[s] or probation," Aplt. Opening Br. at

7-8. This should "give us pause," contends Mr. Dixon, because he was not observed by law enforcement at any time during an extensive investigation and reliable evidence in the form of telephone records was apparently available but not offered into evidence. *Id.* at 13-14.

It is true that most of the government's witnesses were coconspirators who hoped to receive some benefit from testifying against Mr. Dixon. But this fact simply goes to the witnesses' credibility, a matter that we will not consider in evaluating the sufficiency of the evidence. *United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir. 2005). Additionally, Mr. Dixon is mistaken to think that physical evidence, such as photographs depicting his involvement with the SDO or phone records documenting the same, is necessary to sustain a verdict. *Id.* at 681. Likewise, he is mistaken to think that a conspiracy conviction cannot rest upon the testimony of coconspirators. *Id.* at 682.

Mr. Dixon's counsel vigorously cross-examined the government's witnesses, particularly concerning their plea agreements and drug abuse, and the jury was repeatedly warned of the need to carefully assess the witnesses' credibility. "The jury apparently believed the witnesses, and that is the end of the matter." *Id.* Mr. Dixon's conviction was based on sufficient evidence.

## II. Due Process

Mr. Dixon next asserts that his "due process right to a fair trial was violated as a result of a witness's unsolicited and highly prejudicial comment

during trial." Aplt. Opening Br. at 11. The "comment" with which Mr. Dixon

takes issue was apparently made during defense counsel's cross-examination of

SDO member Kyla Weisberg, a self-described friend and former housemate of

Mr. Dixon, but was brought to the jury's attention in the government's redirect

examination of Ms. Weisberg:

> Q [The Government] Ma'am, at one point during your cross-examination by [defense cou
> something that you didn't really vocalize, but I thought that I saw your lips move.
> Did you say something --
>
> A [Ms. Weisberg] I --
>
> Q -- to Mr. Dixon at that time? Did you say, I am sorry?
>
> MR. POLAND: Your Honor, I object. I didn't witness this. I have
> no idea what counsel is coming up with here. I object. I think this is
> improper.
>
> THE COURT: Well, your objection is duly noted but it certainly is
> relevant. It's not trumped by Rule 403. The objection is not
> grounded in any cogn[iza]ble rule. It is overruled. . . . If you recall
> the question and can answer it, please answer it. . . .
>
> . . . .
>
> A I did. I just -- this is not how I wanted it to turn out.
>
> Q This is not how you wanted it to turn out?
>
> A It just hurts. It hurts. It just -- can we just go on?
>
> Q So you did say to Mr. Dixon, I am sorry?
>
> A Yes. Yes.
>
> Q Do you regret having to do this?

-5-

A  I wish I didn't have to.

R., Vol. VII at 199-201.

We review de novo whether a defendant's Fifth Amendment right to due process was violated. *See United States v. Nichols*, 169 F.3d 1255, 1267 (10th Cir. 1999); *United States v. Thody*, 978 F.2d 625, 628 (10th Cir. 1992). Here, Mr. Dixon asserts that the "prejudicial nature" of Ms. Weisberg's apology "is apparent," and that it "so infected the trial with unfairness as to make [his] resulting conviction a denial of due process." Aplt. Opening Br. at 16, 18. We disagree.

In the one case cited by Mr. Dixon concerning a witness outburst, the Eighth Circuit concluded that the defendant's due process rights were *not* violated despite the state trial court's refusal to grant a mistrial and its failure to sua sponte give a curative instruction after a rape victim during direct examination "'screamed'" from the witness stand, "'Don't make me say this, I can't, I can't.'" *Phea v. Benson*, 95 F.3d 660, 661 (8th Cir. 1996). The court reasoned that the victim's comment neither mentioned the defendant nor pertained to any of the evidence or claims before the court. *Id.* at 662. Further, the statement "in no way enhanced the victims's credibility" but was rather a natural response to having to relate the details of the rape. *Id.*

As in *Phea*, Mr. Dixon's due process rights were not violated by the admission of Ms. Weisberg's comment. That is, her comment did not "so infect[]

-6-

the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 661 (internal quotation marks omitted). Even if the jury may have viewed her apology as enhancing her credibility to some degree, it certainly did not bolster it so much as to warrant a new trial. Moreover, to the extent that Mr. Dixon is making a prosecutorial misconduct argument, it too is unavailing. There is nothing in the record to support his contention that the government's inquiry on redirect was made in bad faith; to the contrary, Ms. Weisberg testified that she did, in fact, inaudibly communicate "I'm sorry" to Mr. Dixon. In the context of the entire trial and having thoroughly examined the transcript, we do not think the government's inquiry "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Thus, we turn to the last issue raised by Mr. Dixon on appeal.

## III. Coconspirator Hearsay Statements

At trial, alleged coconspirator Travis DeGiovanni testified that Kaleigh Reynolds told him that Mr. Dixon had introduced her to the SDO. R., Vol. VII at 118-19. Mr. Dixon argues that this inadmissible hearsay testimony was erroneously admitted over his objection that it was not "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy," under Fed. R. Evid. 801(d)(2)(E). R., Vol. VII at 119. He also contends that the district court committed reversible error by admitting the challenged testimony

without determining that the testimony fell within Rule 801(d)(2)(E)'s definition. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

We review evidentiary rulings for an abuse of discretion, ever mindful that "[o]ur review is even more deferential where," as here, "the ruling concerns the admissibility of what is claimed to be hearsay evidence." *United States v. Cestnik*, 36 F.3d 904, 906-07 (10th Cir. 1994). The government concedes that the district court's failure to make the requisite findings was an abuse of discretion. *United States v. Rascon*, 8 F.3d 1537, 1539 (10th Cir. 1993). Notwithstanding, it contends that the admission was harmless. We agree.

"A nonconstitutional error, such as the erroneous admission of evidence under a well-established exception to the hearsay rule, is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Cestnik*, 36 F.3d at 910 (internal quotation marks omitted). Considering the "record as a whole," *id.* at 907, the challenged testimony was comparatively small (there was extensive testimony concerning Mr. Dixon's participation in the SDO), and it was cumulative and corroborative of the testimony of two other witnesses, *United States v. Clifton*, 406 F.3d 1173, 1179 (10th Cir. 2005). As such, we conclude that the error was harmless because it did not have "a substantial influence on the outcome" or leave us "in grave doubt as to whether it had such effect." *Cestnik*, 36 F.3d at 910 (internal quotation marks

-8-

omitted).  *Cf. United States v. Encinias*, 123 F. App'x 924, 938 (10th Cir. 2005) (unpublished) (observing that "only a minuscule number of the multitude of reported conspiracy cases have been remanded or reversed due to a trial judge's failure to make formal 801(d)(2)(E) findings").

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge