# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-04-00766-CR

**Gerald Herrera, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
### NO. 2002-076, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Gerald Herrera appeals his conviction of aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2005). A jury acquitted appellant of two counts of assault and found him guilty on a third count, assessing punishment at eight years in prison. The trial court entered an affirmative finding that a knife exhibited in the incident constituted a deadly weapon. In four issues, appellant complains that the evidence was legally and factually insufficient and that the trial court erred in admitting into evidence an unrecorded oral statement taken while he was incarcerated on an unrelated charge. Because the evidence is sufficient and the statement was properly admitted, we affirm the judgment of conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

The evidence at trial showed that in the early morning hours of July 22, 2001, a fight broke out between Hispanic patrons of the Mira Mar Bar in Lockhart and a group of African-

Americans outside the bar. The Herrera family was at the bar celebrating appellant's birthday. Several African-American males who had been across the street in the park, playing basketball and drinking beer, entered the bar to shoot pool. The owner asked them to leave because they were prohibited from bringing alcohol into the bar. As they gathered on the porch to finish their beers, words were exchanged between appellant's sister, Gerismisa Herrera, and Richard Asberry, one of the African-American males, as Gerismisa left the bar and hit Asberry with the door. He told her to watch where she was going and she went back into the bar to get her brothers. She returned with her brothers, appellant and David Herrera, and her father, Natividad Herrera.

As David Herrera exited the bar, witnesses Javon Haggard and Shaun Russell observed him holding a knife or box cutter in one hand. They started to leave the premises. As they returned to the park across the street, they observed numerous patrons coming from the bar into the street and a fight erupted between the two groups.

Sheena Russell, Shaun's sister, reported the fight to her mother, Shari, who was at her sister-in-law's nearby house. Shari Russell testified that, when she arrived at the scene, the boys were across the street at the park and the Hispanics began "charging" the African-Americans. She recognized appellant because she had worked with his wife and mother at a local nursing home. She observed David Herrera trying to "cut a group of boys in the street." She also observed appellant and his mother holding knives. Brandishing the knife, appellant then "sucker-punched" her in the eye. She fell unconscious to the ground.

During the disturbance, several individuals were cut or stabbed, including Javon Haggard (the complainant in count one), Shaun Russell (the complainant in count two), Dywane

2

Ralston, Alex Boyd, Lester Britton, and Angelita Martinez. Witnesses observed appellant and his brother David using knives during the fight. Shari Russell, the complainant in count three, was not stabbed, but was punched in the eye.

As the police arrived, they stopped a car in which appellant and his parents were leaving. Appellant was in the back seat. A search of the car revealed a pocket knife on the back floorboard. Appellant was arrested on an outstanding warrant for failure to appear in court on an unrelated charge.

Lockhart Police Officer David Powell began to question witnesses immediately after the incident. He spoke with appellant later that morning at the jail in an effort to determine what had happened. Appellant told Powell that he had participated in the fight and had possessed the knife recovered from the back floorboard. Powell testified that appellant said that he was celebrating his birthday when he learned that a fight had started outside. Appellant went outside the bar, saw his sister arguing with some black males and his brother actually fighting with them. He looked for his father and saw his father fall to the ground as a black male backed away. Appellant went out into the street but was hit, lost his glasses and could not see because of his poor eyesight, and fell to the ground. Powell testified that appellant admitted that he had a pocket knife and had removed the knife from his pocket and dropped it on the floorboard when his parents' car was stopped by the police. He told Powell that he had tried to pull the knife out of his pocket after he was knocked to the ground, but could not do so because he was being kicked or punched while lying on the ground. The statement was not recorded and the officer did not advise appellant of his statutory or constitutional rights.

3

That same day, Officer Powell went to the Herrera home and spoke with Gerismisa and her father, Natividad Herrera, as part of his "preliminary investigation as to what happened." Powell also spoke with Mrs. Herrera, appellant's mother, and the individuals who had been injured in the fight. Powell testified that from July 22 until August 8 or 10, he worked on the investigation full time, trying to sort out the events. Appellant gave a written statement on July 31, 2001, in which he admitted to participating in the fight, and possessing the knife. At trial, neither party offered into evidence the written statement.

In separate proceedings, appellant's brother, David Herrera, and sister, Gerismisa Herrera, pleaded guilty to assault. David Herrera testified at appellant's trial, admitting to brandishing and using the knife to "cut" four individuals. He testified that he and his brother were often mistaken for one another as well as their father, and that he never saw appellant with a knife that night: "I know he has one on him, but . . . I didn't see him use it." David Herrera attributed the conflict between the parties to an incident in 1992 in which he cut Shaun Russell and Dywane Ralston and pleaded guilty to assault. He denied that appellant participated in the fight and claimed that he was the one who hit Shari Russell.

The jury acquitted appellant of the assaults against Haggard and Shaun Russell in counts one and two, but found him guilty of aggravated assault with a deadly weapon against Shari Russell in count three.

**ANALYSIS**

In his first two issues, appellant contends that the trial court erred in admitting his unrecorded oral statements to Officer Powell while in custody. Specifically, he complains that his statements that he participated in the fight and possessed a knife were inadmissible because the statements were obtained without *Miranda* warnings[1] and did not comply with article 38.22 of the Texas Code of Criminal Procedure.[2] The State acknowledges that appellant did not receive *Miranda* warnings prior to making the challenged statements to Powell, but it argues that the evidence was correctly admitted by the trial court because the statements were not the product of custodial interrogation.

Although appellant filed a motion to suppress statements obtained in violation of *Miranda* and article 38.22, he did not seek a hearing on the motion prior to trial. At trial, when the State introduced the statements through the testimony of Officer Powell, appellant objected and a brief hearing was conducted out of the presence of the jury. The trial court overruled the objection and admitted the statements.

As to his first issue, appellant alleges that the trial court's decision to admit statements at trial that were made by appellant to a law enforcement official without *Miranda* warnings violated his Fifth Amendment right against self-incrimination. The Fifth Amendment requirements of *Miranda v. Arizona* apply only if the statements at issue were the result of "interrogation" of a suspect who was at the time in "custody." *Miranda v. Arizona*, 384 U.S. 436,

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (West 2005).

5

444 (1966). Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (i) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak, *Miranda*, 384 U.S. at 467, and (ii) when the inquiry is conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought, *Garner v. United States*, 424 U.S. 648, 657 (1976). Only questioning that reflects a measure of compulsion above and beyond that inherent in custody itself constitutes interrogation, the fruits of which may be received in evidence only after *Miranda* warnings have been given. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Courts generally have declined to equate incarceration with custody for purposes of *Miranda*. *See, e.g.*, *United States v. Newton*, 369 F.3d 659, 670 (2nd Cir. 2004); *United States v. Menzer*, 29 F.3d 1223, 1232-33 (7th Cir. 1994); *Garcia v. Singletary*, 13 F.3d 1487, 1491 (11th Cir. 1994); *United States v. Conley*, 779 F.2d 970, 973-74 (4th Cir. 1985).[3] The questions asked must have been both likely to elicit an incriminating response and to produce psychological pressures that will subject the individual to the "will" of his examiner. *Innis*, 446 U.S. at 300-01; *Miranda*, 384 U.S. at 457-58.

Here, appellant argues that "[n]otwithstanding Powell's claim that he was merely trying to clarify what had happened in the altercation, the purpose of the interview was to elicit an 'incriminating response' from Appellant about his participation in the offense." But there is no support in the record for this assertion. On direct examination, Powell testified: "I asked Gerald some questions. At that time, I was gathering information and didn't know Mr. Herrera's

---

[3] The Supreme Court has declined to address the question of whether incarceration constitutes custody for purposes of *Miranda*. *See Bradley v. Ohio*, 497 U.S. 1011 (1990) (Marshall, J., dissenting from denial of certiorari).

involvement, if any, in the assault." Relying on his motion to suppress and arguing that appellant was already a suspect when he spoke with Powell, appellant's counsel objected to the admissibility of the statement. Outside the presence of the jury, defense counsel elicited that, at the time Powell interviewed appellant on the morning following the fight, Powell had spoken with another police officer who advised him that the Herrera family was "involved in the altercation" but not that they were suspects. The State then established that appellant was in custody on an unrelated offense, was not a suspect, and was not detained on the instant offense. Overruling appellant's objection, the trial court admitted the officer's testimony about the statement. Although appellant knew he was being questioned by Powell and was incarcerated, there is no evidence in the record of coercive pressure or that appellant was compelled to speak. Apart from the fact of incarceration, there is no evidence of compulsion or that the statement was otherwise one of custodial interrogation.[4] We cannot say the trial court erred in admitting the statements. Appellant's first issue is overruled.

Appellant next argues that the statement was inadmissible because it did not comply with article 38.22 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). Article 38.22 governs the admissibility of oral statements made by an accused during custodial interrogation. *Id.* Section 3(a) of article 38.22 requires (i) oral statements to be electronically recorded, (ii) the accused to be given the warnings set out in section 2, and (iii) the

---

[4] Although the Texas Court of Criminal Appeals has not addressed who bears the burden of proving that the statement was not the result of custodial interrogation, the Court of Appeals for the Fifth Circuit has held that a defendant bears the burden of proving that a prosecution-offered statement is one to which *Miranda* applies. *United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir. 1986); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984); *see also* 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 13.384 (2d ed. 2001).

accused to knowingly, intelligently, and voluntarily waive any rights set out in the warning. *Id*. § 3(a). The statute, however, does not preclude admission of a statement that does not stem from "custodial interrogation."[5] Because the statement did not stem from custodial interrogation, it was not improper for the trial court to admit it into evidence.

In his third and fourth issues, appellant challenges the legal and factual sufficiency of the evidence to support the deadly weapon finding. He urges specifically that the evidence does not establish that appellant *used* a knife to commit the assault against Shari Russell.

The indictment charged appellant with aggravated assault by striking Shari Russell with his hand and by use and exhibition of a deadly weapon, to wit, a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury. A person commits the crime of assault if he (i) intentionally, knowingly, or recklessly (ii) causes bodily injury to another. *See* Tex. Pen. Code Ann. § 22.01(a)(1) (West Supp. 2005). If a person uses or exhibits a deadly weapon during the commission of an assault, he can be convicted of aggravated assault. *See id*. § 22.02(a)(2). Appellant contends that the evidence of his use of a deadly weapon was legally and factually insufficient because appellant punched Mrs. Russell in the eye, temporarily knocking her unconscious, but he did not motion at her with the knife he had in his other hand. Thus, he urges that, even if he is found to have had a knife, he did not *use* or *exhibit* the pocket knife for the purpose of facilitating the offense. The possession of the knife was only incidental to, and not a component

---

[5] *See* 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* §§ 13.384, .386 (2d ed. 2001) (defendant probably has initial burden of establishing applicability of article 38.22).

of, the commission of the assault. But he also claims that he never removed the knife from his pocket except to discard it on the floorboard.

Although a knife is not a deadly weapon per se, the State can, without expert testimony, prove a particular knife to be a deadly weapon by showing the manner of its use or intended use and its capacity to produce death or serious bodily injury. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). An object is a deadly weapon if the actor intends a use of the object in which it would be *capable* of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

In a legal sufficiency review, we look at the relevant evidence in the light most favorable to the verdict and determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

Factual sufficiency requires the reviewing court to view the evidence "without the prism of 'in the light most favorable to the prosecution.'" *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). There are two prongs to a factual sufficiency review: the reviewing court must ask (i) whether the state's evidence, taken alone, is so weak that it renders the adverse finding

9

clearly wrong or manifestly unjust; and (ii) whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11. A factual sufficiency review must employ appropriate deference to the fact finder's role as the sole judge of the weight and credibility to be given to witness testimony. *Johnson*, 23 S.W.3d at 7. A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002).

Because other victims were cut and Shari Russell was not, appellant argues that these facts render the evidence that he used or exhibited a deadly weapon during the attack legally and factually insufficient. He also contends that the witnesses' testimony concerning whether appellant was exhibiting a knife was contradictory.

The allegation that the knife was used or exhibited as a deadly weapon is amply supported by the evidence. By her testimony, Mrs. Russell "heard" the knives and bottles being broken. She saw the "hispanics" with "blades" "in the reflection of the streetlights . . . in their hands and . . . swinging them." She saw appellant with a knife in his hand trying to "cut" the boys. When asked whether she knew what kind of knife it was, she responded: "It looked like—when—when I ran up on him, he was going like this (indicating), so I said switchblade, but it was a knife." She observed him act as though he was going to cut someone. As she intervened he knocked her out and she fell unconscious on the ground: "He had the knife in this hand and then he sucker-punched me in my eye." Shaun Russell also saw appellant with a knife in his hands and appellant acknowledged

10

in his statement to Powell that he possessed a knife but that he kept it in his pocket. Javon Haggard testified that he was cut by David Herrera and did not see appellant with a knife. Shaun Russell testified that he, too, was cut by David Herrera, but that appellant was also carrying a knife. He knew that he had been cut by David Herrera, but thought he might also have been cut by appellant. The fact finder was warranted in concluding from the nature of the encounter between Mrs. Russell and appellant and her testimony that appellant intended to use the knife in a manner that would be capable of causing death or serious bodily injury.

Viewed in the light most favorable to the verdict, the evidence is sufficient to show that appellant used or exhibited a knife during an assault. We find that a rational trier of fact could have found beyond a reasonable doubt that appellant used or exhibited a knife as a deadly weapon during the assault. We therefore conclude the evidence is legally sufficient to support the deadly weapon finding. Appellant's third issue is overruled.

Likewise, we conclude that the evidence was factually sufficient. The evidence is sufficient to meet the first prong of our factual sufficiency review. The State's evidence that a knife was used as a deadly weapon during the assault was not so weak as to render the judge's finding clearly wrong or manifestly unjust. *See Zuliani*, 97 S.W.3d at 593-94. Under the second prong of a factual sufficiency review, we must ask whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the available evidence. *See id*. Appellant relies on his brother's testimony that the brother was the assailant and that appellant did not participate in the fight. But the jury was entitled to evaluate the credibility of the witnesses and to

11

weigh the evidence. *See Johnson*, 23 S.W.3d at 9. We conclude the evidence is factually sufficient to support the deadly weapon finding. We overrule appellant's fourth issue.

## CONCLUSION

Finding the evidence legally and factually sufficient to support the finding that a deadly weapon was used or exhibited during the commission of the assault and that the trial court did not err in admitting appellant's statement, we affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: December 1, 2005

Do Not Publish