**Marco GARCIA, Petitioner–Appellant,**

v.

**Harry K. SINGLETARY; Robert Butterworth, Respondents–Appellees.**

No. 92–3288.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1994.

Matthew P. Farmer, Tampa, FL, for petitioner-appellant.

Erica Raffel, Atty. General's Office, Tampa, FL, for respondents-appellees.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The appellant contends that the jail official's interrogation of him following a criminal incident inside the jail violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); therefore, the district court erred in admitting his statements at trial. On this issue of first impression in this circuit, we hold that under the facts of this case, *Miranda* warnings were not required and affirm the district court.

## FACTS

On October 14, 1986, Deputy Robert Gardner, a corrections officer at the Hillsborough County Jail, observed smoke and flames coming from Marco Garcia's cell. Gardner approached the cell and, peering through a small glass window of the cell door, observed a figure moving about the cell. Upon entering the cell, Gardner saw a pink sheet draped over the sink in flames, and Garcia, the only person in the cell, placing stuffing from his

mattress onto the fire. After directing Garcia to leave the cell, Deputy Gardner moved the sheet to the floor and extinguished the fire.

After extinguishing the fire, Gardner asked Garcia "why he set the fire."[1] According to Gardner, Garcia responded to his question, stating, "I no get my canteen. I no get my canteen.... I got my rights."[2] To this response, Deputy Gardner exclaimed, "Hey, everybody has got rights. These guys have a right to breath." Deputy Gardner, however, never informed Garcia of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The state prosecuted Garcia for first-degree arson. During the trial in January, 1987, the district court overruled defense counsel's objection to the admission of Garcia's statements. Garcia's statements became an important piece of the state's case, leading to his conviction of first-degree arson.

## PROCEDURAL HISTORY

Following his trial, Garcia unsuccessfully appealed his conviction and subsequently exhausted all state remedies. On November 1, 1991, Garcia filed a renewed petition for writ of habeas corpus in the United States District Court for the Middle District of Florida, claiming that the trial court erred in admitting his statements because Deputy Gardner failed to inform him of his *Miranda* rights. Following an evidentiary hearing on September 18, 1992, a United States magistrate filed a Report and Recommendation, concluding that the deputy's inquiry constituted "on-the-scene questioning," that Garcia was not "in custody" for *Miranda* purposes, and advising that the district court deny Garcia's petition. The district court adopted the magistrate's report and denied Garcia's petition.

## CONTENTIONS OF THE PARTIES

Garcia contends that the district court erred in denying his petition for writ of habeas corpus because Gardner's question constituted a "custodial interrogation" pursu-

ant to *Miranda.* The government contends that the district court committed no error because Gardner's inquiry constituted "on-the-scene questioning," that did not trigger the *Miranda* warnings requirement.

## ISSUE

The sole issue in this appeal is whether *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), required that Deputy Gardner inform Garcia of his constitutional rights before asking why he started the fire.

## DISCUSSION

 *Miranda* warnings must precede any "custodial interrogation." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. A "custodial interrogation" occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. General "on-the-scene questioning," however, concerning the facts and circumstances surrounding a crime or other general questioning of citizens during the fact-finding process do not trigger *Miranda* warnings. *Miranda,* 384 U.S. at 477–78, 86 S.Ct. at 1629–30. *United States v. Scalf,* 725 F.2d 1272, 1276 (10th Cir.1984).

██ In *Mathis v. United States,* 391 U.S. 1, 4, 88 S.Ct. 1503, 1504, 20 L.Ed.2d 381 (1968), the Supreme Court extended these safeguards to inmates in a prison setting. In *Mathis,* an Internal Revenue Service agent questioned a prison inmate about potential violations of the tax code without informing him that any information provided could supply the basis for a criminal prosecution. Following his conviction for criminal tax violations, Mathis appealed arguing that the admission at trial of his statements to the IRS agent violated *Miranda.* The Supreme Court agreed, reversing his conviction and holding that under the circumstances, Mathis was entitled to and wrongly deprived of *Mi-*

---

**1.** Later, during the same direct examination, Gardner testified that after putting out the fire he asked Garcia "what he thought he was doing by doing that."

**2.** At the time of this incident, Garcia, a recent immigrant from Cuba, spoke little English.

*randa* warnings. *Mathis,* 391 U.S. at 4–5, 88 S.Ct. at 1504–05.

Seizing on the Supreme Court's holding in *Mathis,* extending the *Miranda* safeguards to prison inmates, Garcia argues that his status as an inmate at a correctional facility entitled him to *Miranda* warnings before Gardner questioned him about the fire. Although Garcia raises an issue of first impression before this court, we are not the first court to consider the effect of the Supreme Court's decision in *Mathis* on *Miranda.* Both the Ninth Circuit and the Fourth Circuit have concluded, under similar circumstances, that a person's status as an inmate does not automatically constitute "in custody," for *Miranda* purposes.

In *Cervantes v. Walker,* 589 F.2d 424 (9th Cir.1978), county jail officials discovered a substance that looked like marijuana in Cervantes's belongings during a routine search, prior to his transfer to another cell. Upon discovering the substance, a sheriff's deputy took the box containing the substance to Cervantes who sat in the prison library awaiting the transfer. The deputy asked Cervantes, "What's this?" to which Cervantes replied, "That's grass, man." The trial court admitted these statements at trial, and Cervantes was convicted for possession of marijuana. *Cervantes,* 589 F.2d at 426–27.

Cervantes filed a petition for writ of habeas corpus, arguing that his status as an inmate at the jail and the nature of the deputy's questions entitled him to *Miranda* warnings. The Ninth Circuit disagreed, holding that under the facts of the case, Cervantes was not entitled to *Miranda* warnings. In reaching this decision, the court first rejected Cervantes's argument, identical to Garcia's argument in this case, that *Mathis* requires prison officials to give *Miranda* warnings anytime they question an inmate. The court reconciled the two cases, stating that such a holding

> would not only be inconsistent with *Miranda* but would torture it to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart.... Thus, while *Mathis* may have narrowed the range of possible situations in which on-the-scene questioning may take place in a prison, we find in *Mathis* no express intent to eliminate such ques-

tioning entirely merely by virtue of the interviewee's prisoner status.

*Cervantes,* 589 F.2d at 427 (footnote omitted).

After reconciling *Miranda* and *Mathis,* the court considered whether the prison officials' conduct would cause "a reasonable person to believe his freedom of movement had been further diminished." *Cervantes,* 589 F.2d at 429. To resolve this issue, the court considered four factors: (1) the language used to summon the individual; (2) the physical surroundings of the interrogation; (3) the extent to which the prison officials confront the individual with evidence of his guilt; and (4) whether officials exerted any additional pressure to detain the individual. *Cervantes,* 589 F.2d at 428. Upon applying these factors to Cervantes's case, the court determined that he was not entitled to *Miranda* warnings, reasoning:

> [t]he questioning took place in the prison library and appears to have been a spontaneous reaction to the discovery [of the marijuana]. Under these circumstances, we also conclude that neither the prison setting nor the presence of [the sheriff's deputies] exerted a pressure to detain sufficient to have caused a reasonable person to believe his freedom of movement had been further diminished. Rather, this was an instance of on-the-scene questioning enabling [the deputy] to determine whether a crime was in progress.

*Cervantes,* 589 F.2d at 429.

The Fourth Circuit reached a similar conclusion in *United States v. Conley,* 779 F.2d 970 (4th Cir.1985), *cert. denied,* 479 U.S. 830, 107 S.Ct. 114, 93 L.Ed.2d 61 (1986), where the appellant, Conley, challenged the admission of statements he made to prison guards following the fatal stabbing of a fellow inmate. After the incident, prison guards discovered a large gouge on Conley's left wrist and escorted him to a conference room where he awaited transfer to the infirmary. In the conference room, Conley informed the guards that he sustained the injury when he attempted to rescue the decedent. Later, after returning from the infirmary, Conley informed a prison guard that the decedent had "a bad attitude." Conley wore handcuffs

to the conference room and full restraints when he returned from the infirmary. *Conley*, 779 F.2d at 971.

On appeal, the Fourth Circuit affirmed Conley's conviction, rejecting his claim that he was entitled to *Miranda* warnings because, as a prison inmate he was in custody at all times during the conversations with the prison officials. Applying the standard announced in *Cervantes*, the court held that Conley "was not 'in custody' for *Miranda* purposes." *Conley*, 779 F.2d at 973. The court stated:

> Although Conley wore handcuffs and, at some points, full restraints, evidence in the record indicates that this was standard procedure for transferring inmates to the infirmary or elsewhere in this maximum security facility. Both officers knew Conley, addressed him by his nickname, and testified that they questioned him as a witness to, rather than an a suspect in, the [decedent's] murder.... Both officers testified that Conley spoke 'freely' during the interviews and Conley concedes, for purposes of this appeal, that his statements were voluntarily made.
>
> Under the circumstances, Conley's freedom of movement cannot be characterized as more restricted than that of other prisoners in transit to and from the facility, either by virtue of his confinement or the nature of the questioning by prison personnel. Accordingly, *Miranda* warnings were not required and Conley's statements were properly admitted at trial.

*Conley*, 779 F.2d at 973–74 (footnotes omitted).[3]

After reviewing the relevant law, we find the reasoning employed in *Cervantes* and *Conley* highly persuasive. We conclude that the Ninth Circuit's and the Fourth Circuit's approaches best reconcile the seeming inconsistency between *Miranda* and *Mathis*.[4] We therefore adopt the reasoning of those courts and apply it to the facts of this case.

Because we reject Garcia's claim that *Mathis* requires *Miranda* warnings anytime a jail official questions an inmate, to succeed on this appeal, Garcia must show that Gardner's actions in some manner "place[d] further limitations on" him. *Cervantes*, 589 F.2d at 428.

### A. Interrogation

■ Garcia contends that Gardner's inquiry was not merely "on-the-scene questioning," but constituted accusations. He argues that Gardner's question amounted to an interrogation because he was the only suspect, and Gardner was not "investigating a crime."

As previously noted, "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process," do not require *Miranda* warnings. *Miranda*, 384 U.S. at 477, 86 S.Ct. at 1629. "On-the-scene questioning" may take place in a prison environment as well as in public. *Cervantes*, 589 F.2d at 429; *see also Scalf*, 725 F.2d at 1276 (prison guard's conversation with defendant after defendant's alleged assault on fellow inmate did not require *Miranda* warnings because it was an on-the-scene inquiry to find out what had happened and not interrogation).

In this case, the facts demonstrate that Deputy Gardner's question was a spontaneous reaction to a startling event. Immediately after arriving on the scene of the inci-

---

3. The Fourth Circuit reaffirmed these principles in United *States v. Cooper*, 800 F.2d 412, 414 (4th Cir.1986).

4. Garcia also argues that *Battie v. Estelle*, 655 F.2d 692 (5th Cir.1981), mandates that a persons confinement in a county jail places them in "custody" within the meaning of *Miranda*. Such reliance is misplaced because in *Battie*, a psychiatrist examined the defendant concerning the offense that led to his incarceration, for the purpose of obtaining admissible evidence at trial, not for an offense which arose during his incarceration. *Battie*, 655 F.2d at 695, 699–700. Moreover, the extended interview did not amount to "on-the-scene questioning" to determine whether a crime was committed. Instead the psychiatrist went to the jail for the explicit purpose of obtaining specific information. In any event, since *Battie*, the Supreme Court has significantly refined the notion of what constitutes "custody" requiring *Miranda* warnings, thereby altering the applicable standards. In fact in one of its recent opinions, the Court stated, in dicta, that the "bare fact of custody may not in every instance require a warning even when the suspect is aware that he is speaking to" a law enforcement official. *Illinois v. Perkins*, 496 U.S. 292, 299, 110 S.Ct. 2394, 2398, 110 L.Ed.2d 243 (1990).

dent, Deputy Gardner sought to determine how the fire had started. After directing Garcia out of the cell, Gardner asked him why he started the fire. Gardner did not threaten Garcia or in any other way force him to answer. Garcia voluntarily responded, "I no get my canteen. I no get my canteen." As a jail guard, charged with the care and safety of all of the inmates, Deputy Gardner acted within the scope of his authority to ensure the safety of Garcia and the other inmates. Therefore, his question was entirely appropriate, given the circumstances. Although accusatorial in tone, his question was not an interrogation within the meaning of *Miranda*.

## B. Custody

Garcia also contends that even if this court requires that he show an "additional restraint" on his freedom, to prove that he was in custody within the meaning of *Cervantes*, he has met this burden. He argues that Gardner applied additional pressure, thereby affecting custody, when he confronted Garcia with evidence of his guilt.

For *Miranda* purposes, custody does not exist unless a public official questions the defendant "in a context where [the defendant's] freedom to depart [is] restricted...." *Conley*, 779 F.2d at 973 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam)). In the context of questioning conducted in a prison setting, restricted freedom "implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement." *Cervantes*, 589 F.2d at 428.

▇ To determine whether prison officials have applied an additional restraint, further restricting an inmate's freedom and triggering *Miranda* warnings, courts must consider the totality of the circumstances surrounding the alleged interrogation. *Conley*, 779 F.2d at 973; *Cervantes*, 589 F.2d at 429; *United States v. Cooper*, 800 F.2d 412, 414 (4th Cir.1986). Applying these principles and considering all of the circumstances of this case, we conclude that Garcia was not in custody within the meaning of *Cervantes* and *Conley* because Gardner placed no additional restraint on his liberty to depart.

Upon discovering the fire, Gardner directed Garcia to leave his cell. After leaving the cell, Garcia stood in the hallway outside the cell while Garcia extinguished the fire. In this manner, Gardner did not isolate, intimidate, coerce, or otherwise pressure Garcia into making a statement. Because Garcia was the only person in the cell during the fire and failing to remove him would have endangered his safety, Gardner's action added no further restraint on Garcia's freedom to depart. In fact, removing Garcia from his cell provided him with greater freedom of movement and significantly reduced those preexisting restrictions. *See Cooper*, 800 F.2d at 414 (removing inmate from cell to more open room deemed "inherently less restrictive").

Although Garcia argues that Gardner's on-the-scene questioning confronted him with evidence of his guilt, the physical surroundings of the interrogation and the fact that Gardner exerted no pressure on Garcia, demonstrates that no additional restraint occurred. Thus, at the time Garcia made his statement, he was not subjected to more than the usual restraint on a prisoner's freedom of action. *Conley*, 779 F.2d at 973.

## CONCLUSION

We hold that under the facts of this case, Deputy Gardner's question to Garcia did not constitute a custodial interrogation within in the meaning of *Miranda*. We therefore affirm the district court.

**AFFIRMED.**