**F I L E D**

**UNITED STATES COURT OF APPEALS**

**January 10, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ALEX SONNI GLOVER, a/k/a Alex
M. Glover, Jr.,

      Defendant - Appellant.

No. 06-5029
(D.C. No. 05-CR-111-CVE-ALL)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.[**]

Defendant-Appellant Alex Glover Jr. pled guilty to being a felon in

possession of a firearm, 18 U.S.C. §§ 922(g)(1) & 924(e), and was sentenced to

180 months imprisonment followed by five years of supervised release. Mr.

Glover challenges, on Fourth and Fifth Amendment grounds, the district court's

denial of his motion to suppress certain incriminating statements made to police.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

He also challenges the district court's determination that his prior felonies for drunk driving and larceny constitute violent felonies under the Armed Career Criminal Act (ACCA). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

Background

Officers of the Tulsa, Oklahoma Police Department set up a controlled buy at a residence from one Chino Conchitias. After the purchase was completed, the officers obtained a search warrant for the residence. The affidavit for the warrant listed the following items to be searched for: "cocaine, drug paraphernalia, monies derived from the sale of illegal drugs, guns, cellular phones, pagers, records, ledgers, keys, unexplained wealth, surveillance equipment and proof of residency." I R. Doc. 13, Ex. 2 at 1. Seven officers then executed the warrant shortly before 10:00 p.m on May 6, 2006. The house was surrounded by a chain-link fence secured by a padlock. With weapons drawn, the officers announced their intent to serve the warrant and asked if anyone was inside the house. Mr. Glover came outside and stated that he and his son, Mr. Conchitias, were in the house. Mr. Conchitias then exited the house as well and opened the locked gate. The officers handcuffed both Mr. Glover and Mr. Conchitias. Mr. Conchitias then indicated that another person, a woman named Tamara, was also inside the house. The officers ordered Tamara to come to the front of the house where she

too was handcuffed.

The officers then placed Mr. Glover, Mr. Conchitias, and Tamara on a couch in the house while they executed the search warrant. During the search, the officers found a .32 caliber pistol located in a fold-up bed in the northwest bedroom of the house. After the search was completed, an officer asked something to the effect of "Who lives here?" III R. at 10, 20, 30-31. Mr. Glover stated the house was his and that he slept in the northwest bedroom. Id. at 31.[1]

Mr. Conchitias and Tamara denied living in the house. The officers then arrested Mr. Glover and Mr. Conchitias. When one of the officers told Mr. Glover and Mr. Conchitias that they were going to jail for possession of marijuana and a gun, Mr. Glover stated, "The gun and marijuana are mine, not his." I R. Doc. 14 at 3; III R. at 11.

Mr. Glover moved to suppress his statements informing the officers that the northwest bedroom was his and that the gun and marijuana were his. He argued that his detention was illegal, tainting the statements, and that the statements were made in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The district court denied Mr. Glover's motion to suppress.

The district court also determined that Mr. Glover qualified for an enhanced sentence under the ACCA because he had previously committed five

---

[1] As discussed infra, we note that the record is not entirely clear on this point.

violent felonies. Specifically, the district court found that Mr. Glover's two previous convictions for drunk driving and one previous conviction for larceny qualified as violent felonies.

Discussion

I.    Mr. Glover's Detention and Incriminating Statements

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view all evidence in a light most favorable to the government. United States v. Riccardi, 405 F.3d 852, 860 (10th Cir. 2005). We accept the district court's factual findings unless they are clearly erroneous. Id. at 859. However, the ultimate determination of Fourth Amendment reasonableness is a question of law that we review de novo. United States v. Kimoana, 383 F.3d 1215, 1220 (10th Cir. 2004).

First, Mr. Glover argues that it was unreasonable for officers to detain him with handcuffs while they searched his house and that his incriminating statements should be suppressed because they were obtained in violation of the Fourth Amendment. However, the Supreme Court has made clear that police may detain occupants of a residence while conducting a search authorized by a proper warrant. See Michigan v. Summers, 452 U.S. 692, 704-05 (1981). Furthermore, the use of handcuffs to effectuate such a detention is proper when the search involves an inherent risk to officer safety. See Muehler v. Mena, 544 U.S. 93,

100 (2005).

In this case, officers were authorized to search for both drugs and guns in a residence where drug-dealing had occurred and which was occupied by a twice-convicted drug dealer. They were confronted with multiple occupants. As in Muehler, the use of handcuffs in this situation was objectively reasonable because their use minimized the safety risk to officers and others. Id.

Second, Mr. Glover argues that his incriminating statements were made in violation of Miranda because he was not first informed of his constitutional right to remain silent. Miranda warnings are required for custodial interrogation. United States v. Patane, 542 U.S. 630, 639 (2004). We agree with Mr. Glover that he was in custody, having been handcuffed and seated in his house. See Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (noting that Miranda protections apply when one's freedom of movement is curtailed in a manner consistent with a formal arrest). All this being said, Miranda does not bar the admission of volunteered statements that are not in response to police questioning. Miranda, 384 U.S. at 478; United States v. Pettigrew, 468 F.3d 626, 633-34 (10th Cir. 2006). If Mr. Glover volunteered incriminating statements without prompting by the officers, those statements are not subject to exclusion.

Interrogation occurs when police engage in "any words or actions . . . that [they] should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). When an officer

asked the occupants if the house was theirs, Mr. Glover "stated the house was his." III R. at 10. An inquiry about the residence of a suspect is one normally attendant to arrest and custody and not subject to Miranda. See Pennsylvania v. Muniz, 496 U.S. 582, 602 (1990); Innis, 446 U.S. at 301.

After stating that the house was his, Mr Glover also stated that he slept in the northwest bedroom III R. at 10, 31. The district court found in its opinion and order that Mr. Glover's statement about the bedroom was part of his response to the officer's question about who lived at the house–and that there was no evidence to the contrary. Aplt. Br. Ex. B at 7-8. But the record does contain evidence to the contrary, which the district court did not address. In any event, however, such evidence is irrelevant given the spontaneous admission by Mr. Glover that he owned the gun and marijuana.

Mr. Glover admitted that the marijuana and gun were his, in response to an officer's statement that he and Mr. Conchitias would be arrested for their possession of the marijuana and gun. Whatever Mr. Glover's reason for making this statement, it was not caused by an interrogation on the part of the officers. Informing a suspect of the grounds for his arrest is prudent police practice and cannot objectively be construed as an attempt to elicit an incriminating response. The district court correctly declined to suppress this statement.

II.    The Armed Career Criminal Enhancement

A sentence enhancement under the ACCA is reviewed de novo. United

States v. Spring, 80 F.3d 1450, 1461 (10th Cir. 1996). Whether a statute defines a "crime of violence" is a question of statutory construction that we review de novo. United States v. Vigil, 334 F.3d 1215, 1218 (10th Cir. 2003). To qualify as a violent felony under the ACCA, a prior conviction must have as an element, "the use, attempted use, or threatened use of physical force against the person of another," or otherwise "involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

Our precedent makes clear that felony DUI convictions constitute violent felonies under the ACCA because they necessarily involve "serious potential risk of physical injury to another." See United States v. Moore, 420 F.3d 1218, 1221 (10th Cir. 2005); see also United States v. Begay, 470 F.3d 964, 967-68. (10th Cir. 2006). To the extent that Mr. Glover asks us to revisit Moore, we lack the power to do so. See United States v. Meyers, 200 F.3d 715, 720 (10th Cir. 2000) (noting that one panel may not overrule another panel). Regardless, we are convinced that the reasoning in Moore is sound and its conclusion is supported by the overwhelming weight of authority from other circuits. See, e.g., United States v. McCall, 439 F.3d 967, 972 (8th Cir. 2006); United States v. Sperberg, 432 F.3d 706, 708 (7th Cir. 2005).

We similarly agree that Mr. Glover's conviction for larceny from a person also constitutes a violent felony. We have said that "physical injury need not be a certainty for a crime to pose a serious risk of physical injury." Vigil, 334 F.3d at

1223. Although our circuit appears not to have passed on the issue, we agree with the numerous other circuits that have found larceny from a person to be a violent felony because of the risk that it will result in a physical struggle between the criminal and victim. See, e.g., United States v. Howze, 343 F.3d 919, 923-24 (7th Cir. 2003); United States v. Griffith, 301 F.3d 880, 885 (8th Cir. 2002); United States v. Payne, 163 F.3d 371, 374-75 (6th Cir. 1998); United States v. Hawkins, 69 F.3d 11, 13 (5th Cir. 1995); United States v. De Jesus, 984 F.2d 21, 23-25 (1st Cir. 1993). Even if the larceny statute under which Mr. Glover was convicted does not involve force as an element, it still involves conduct that presents the risk of serious physical injury, namely the theft of property from another's person.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge