[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 9, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11097
Non-Argument Calendar
_____

D. C. Docket No. 04-60232-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HAROLD JULES,
a.k.a. Ray-Ray,
a.k.a. Harold Jean Jules,
STEVEN EUGENE,
a.k.a. Steven Eugene Lousley,
a.k.a. Louie,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 9, 2007)**

Before DUBINA, CARNES and FAY, Circuit Judges.

PER CURIAM:

Harold Jules and Steven Eugene appeal their convictions for cocaine base conspiracy and distribution, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Eugene challenges the district court's admission of evidence of his uncharged drug sales, the admission of taped conversations, and the admission of telephone subscriber records. He also argues that the district court erred in denying, in part, his motion to suppress his statements to law enforcement. Jules also challenges the district court's denial, in part, of his motion to suppress his statements to law enforcement. Additionally, Jules contends that the district court abused its discretion in denying his motion for a mistrial due to prosecutorial misconduct. For the reasons set forth more fully below, we affirm.

We review the district court's evidentiary rulings for abuse of discretion. United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006), cert. denied, 127 S.Ct. 1305 (2007). We review constitutional challenges de novo. United States v. Chau, 426 F.3d 1318, 1321 (11th Cir. 2005). We review the district court's admission of tape recordings as reliable for abuse of discretion. See United States v. Pope, 132 F.3d 684, 688 (11th Cir. 1998). "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). "This

2

Court reviews a district court's factual findings supporting the denial of a motion to suppress for clear error, and in the light most favorable to the Government. The application of the law to the facts is reviewed de novo." United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005). When deciding the ultimate issue of the voluntariness of a defendant's confession, we may substitute our independent judgment after a review of the entire record. Cannady v. Dugger, 931 F.2d 752, 753-54 (11th Cir. 1991). We review the denial of a motion for a mistrial for abuse of discretion. United States v. Diaz, 248 F.3d 1065, 1101 (11th Cir. 2001). "If a district court issues a curative instruction, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Id. (citations and quotation marks omitted). We review "a prosecutorial misconduct claim de novo because it is a mixed question of law and fact." Eckhardt, 466 F.3d at 947.

Eugene argues that the district court abused its discretion by admitting evidence of uncharged drug purchases under Rule 404(b) of the Federal Rules of Evidence. He also argues that the cooperating witness's testimony regarding her friends' drug purchases was admitted in violation of his right to confrontation.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

3

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed.R.Evid. 404(b).

> [E]vidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. Nonetheless, evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403.

United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (citations, quotation marks, and emphasis omitted) (second alteration in original).

Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403. Whether the probative value is not substantially outweighed by unfair prejudice is a "determination [that] lies within the discretion of the district court and calls for a common sense assessment of all the circumstances surrounding the extrinsic

4

offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." United States v. Perez, 443 F.3d 772, 780 (11th Cir. 2006) (citation and quotation marks omitted).

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Confrontation Clause is only applicable to testimonial hearsay. Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006). Testimonial evidence is admissible only if the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).

At trial, a law enforcement officer testified that, on July 28, 2004, he detained a man and woman who entered a house he had under surveillance, and discovered the woman in possession of a user amount of crack cocaine. He then enlisted her cooperation, and used her to make three undercover purchases at the residence. This cooperating witness testified that she met Jules in early July 2004 through two friends when they purchased drugs from Jules, and met Eugene at his house about a week after she met Jules. She testified that Jules, who was at the house, introduced her, and she purchased crack cocaine from Eugene. Aside from

5

the undercover purchases, she also testified regarding additional drug transactions between herself, her two friends, and Eugene and Jules that took place in July and August 2004. The district court admitted the evidence of these additional drug transactions over objection, finding that evidence of other acts within the period of the charged conspiracy was admissible as intrinsic evidence, necessary to complete the story, and necessary to explain the defendants' identity, motive, and intent. Alternatively, the district court found that the evidence's probative value outweighed its prejudicial effect under Rule 404(b). The district court, however, refused to permit the cooperating witness to testify as to any statements made by her two friends.

We discern no abuse of discretion in the district court's decision to admit evidence of uncharged drug sales by Eugene as intrinsic evidence. See Edouard, 485 F.3d at 1344; Perez, 443 F.3d at 780; see also United States v. Delgado, 56 F.3d 1357, 1366 (11th Cir. 1995) ("[E]xtrinsic drug offenses do not tend to incite a jury to an irrational decision."). All of the drug purchases took place during the charged conspiracy. The cooperating witness's testimony regarding drug purchases preceding her July 28, 2004 arrest explained how she met Jules and Eugene, how she knew that they sold drugs, why she was at the residence purchasing crack cocaine from Eugene on July 28, and how she was able to

6

identify the person who sold her drugs for the undercover purchases that formed Eugene and Jules's substantive distribution offenses.   We also find no error under the Confrontation Clause because the cooperating witness's testimony regarding these transactions contained no hearsay, as it was based upon her personal knowledge, and the district court refused to permit her to testify as to any statements made by her friends.  See Davis, ___ U.S. at ___, 126 S.Ct. at 2273-74; see also Fed.R.Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Relying on the tapes themselves to support his argument and citing the tapes of the July 28 and July 30 undercover transactions, Eugene contends that the inaudible portion of the tapes are so substantial as to render the recordings as a whole untrustworthy.[1]  Partial inaudibility does not necessarily make the recordings inadmissible.  United States v. Greenfield, 574 F.2d 305, 307 (5th Cir. 1978).  "The district court is required to exclude a recording only if the inaudible or unintelligible portions are so substantial as to render the whole recording untrustworthy."  Pope, 132 F.3d at 688 (citation and quotation marks omitted).

---

[1] Although the district court initially admitted the July 30 tape, it was never played for the jury, as the district court reversed this ruling and excluded both the tape and the government-prepared transcript of the conversation.

7

Although we were unable to review the tape of the July 28 transaction, as it was not part of the record on appeal, the court reporter prepared the transcription of the July 28 conversation by listening to the tape as many times as necessary. Our review of this transcription reveals that there were frequent instances where the court reporter found the tape inaudible. However, portions of the tape that were audible contained references to "Ray-Ray" and "Louie" (Jules and Eugene) and could be interpreted as referring to the type of drugs to be purchased, their quality, and payment for those drugs and for the previous drug purchase. In addition, the cooperating witness involved in this transaction provided context to some audible portions of the tape. Accordingly, we find no abuse of discretion in the district court's decision to admit this tape.

Eugene also challenges the district court's decision to admit evidence of telephone subscriber records, arguing that they were inadmissible under the business records hearsay exception because the government failed to establish that the ultimate source of the information, the customer, had a business duty to report that information, and because the phone company did not require the subscriber to provide identification when purchasing a cellular telephone. The records at issue are subscriber profiles in the name of Wayland Pierre. These profiles were generated by a mobile phone company and contained the subscriber's name and

8

address, and the ESN number for the phone that the subscriber purchased.  The company's custodian of records testified that the records were kept in the ordinary course of business and that the information in the profile is provided by the subscriber to the store clerk, who entered this information on a computer and who had knowledge of the information that was provided to him or her, whether that information was true or not.  The records custodian also testified that the person providing the information to the clerk is not required to provide identification.  The district court admitted these subscriber profiles, under the rationale of United States v. Cestnik, 36 F.3d 904 (10th Cir. 1994), because the records were not being offered for the truth of the matter asserted as to the identity of the subscriber.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed.R.Evid. 801©).  Rule 803(6) of the Federal Rules of Evidence provides that the following are not excluded by the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

9

Fed.R.Evid. 803(6). We have held that, "[f]or this exception to be available, all persons involved in the process must be acting in the regular course of business--otherwise, an essential link in the trustworthiness chain is missing." T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc., 931 F.2d 816, 828 (11th Cir. 1991) (holding that a phone survey of hospital employees was inadmissible under the business records exception where the out-of-court declarants did not report in the regular course of business to the survey interviewers); see also ADP-Fin. Computer Servs., Inc. v. First Nat'l Bank of Cobb County, 703 F.2d 1261, 1266 (11th Cir. 1983) (holding that customer surveys are not admissible under Rule 803(6)). However, we upheld the admission of a rental agreement bearing the defendant's signature under Rule 803(6), noting that the employee's inability to identify the defendant went to the weight of the evidence. United States v. DeSimone, 660 F.2d 532, 543 (5th Cir. Unit B Nov. 1981).[2]

In Cestnik, the Tenth Circuit held that, despite the fact that the source of the information has no business duty to report, the documents at issue – Western Union "to-send-money" forms – were admissible where the statements were

---

[2] This former Fifth Circuit case was decided after the close of business on September 30, 1981, and is binding precedent under Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982).

nonhearsay because they were not offered for the truth of the matter asserted.  See

Cestnik, 36 F.3d at 908-09.  These forms listed various names as the sender of the

money.  Id. at 907.  With regard to the admission of these names, the Court held,

"[b]ecause other evidence introduced by the government sufficiently demonstrated

that the names were fictitious and that the sender's assertions that 'I'm Jim Simms'

and 'I'm Bill Johnson' were intentional falsehoods, we agree that the names were

nonhearsay because they were not offered for their truth."  Id. at 909.

In this case, the government introduced evidence that the telephone numbers

subscribed to under the name of Wayland Pierre were used by Jules and Eugene.

By admitting the statement "I am Wayland Pierre" made by the subscribers as

nonhearsay, the district court eliminated the hearsay within hearsay problem

caused by the fact that the subscriber lacked a business duty to furnish the

information.  We therefore conclude that the district court's ruling was not an

abuse of discretion.

Eugene and Jules both challenge the partial denial of their motions to

suppress their statements to law enforcement.  Eugene contends that the record

does not support the district court's findings that he was given his Miranda[3]

warnings because there was no testimony as to the exact words the agent used in

---

[3]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

reading the Miranda rights and the agent did not have the card he used at the hearing. He further argues that the agent's testimony regarding his alleged spontaneous statements was incredible and that it defied common sense that he would make these statements in the absence of some type of questioning. Jules contends that, by laughing to himself, he did not intend to initiate a conversation with the police or to waive his previously asserted right to silence. He argues that, under the circumstances, the officer's question in response to his laughter constituted an interrogation because the officer should have known that his question was reasonably likely to elicit an incriminating response.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. Miranda warnings must precede any "custodial interrogation." Garcia v. Singletary, 13 F.3d 1487, 1489 (11th Cir. 1994). "Voluntary and spontaneous comments by an accused, even after Miranda rights are asserted, are admissible evidence if the comments were not made in response to government questioning." Cannady, 931

F.2d at 754.

> Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent . . . [T]he term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. . . . [T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

Rhode Island v. Innis, 446 U.S. 291, 300-02, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980) (footnotes omitted) (emphasis in original).

A Drug Enforcement Administration ("DEA") agent arrested Eugene following a search of his house and testified that he read Eugene his Miranda rights. The next morning, the same agent transported Eugene from the federal detention center to his initial appearance. He testified that he and Eugene were alone in the vehicle and that he did not question Eugene or engage in conversation other than simple small talk, such as informing Eugene to sit. The agent further testified that, soon after they left the detention center, Eugene made various statements. Over objection at trial, the agent testified that Eugene said, "I figured out the whole case. . . . [Y]'all got me F'd up real good. . . . I knew that guy was the police, but I sold to him anyway, because I trusted Vito; am I right?" Eugene

13

also said that Vito was his friend, he went to the movies with Vito, and they "must have cased up Vito real good to get him."

Despite the failure of the law enforcement officer to testify as to what he specifically said to Eugene, the district court did not clearly err in finding that Eugene was properly given his Miranda rights at the time of his arrest in light of evidence that the agent used a DEA card to advise Eugene of his rights, the agent read this card generally and as a matter of policy so that he did not omit any of the rights, and, after the agent informed Eugene of his rights, Eugene invoked his right to remain silent by saying that he had no comment. Moreover, the absence of Miranda warnings would not preclude the admission of a spontaneous statement. See Garcia, 13 F.3d at 1489 (holding that Miranda warnings must precede any "custodial interrogation"); United States v. Glen-Archila, 677 F.2d 809, 814 (11th Cir. 1982) (holding that a voluntary and spontaneous statement is admissible despite the absence of Miranda warnings); United States v. Savell, 546 F.2d 43, 45-46 (5th Cir. 1977) (holding that a voluntary and spontaneous statement is admissible despite inadequate Miranda warnings).

Eugene, who did not testify at the suppression hearing, attacks the district court's finding that his statements during the car ride were spontaneous on the ground that the officer's testimony that these statements were not elicited through

14

questioning was incredible. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). "[A] trial court's credibility determination 'is conclusive on the appellate court unless the judge credits exceedingly improbable testimony.'" Odili v. U.S. Parole Comm'n, 474 F.3d 1255, 1261 (11th Cir. 2007) (quoting Ramirez-Chilel, 289 F.3d at 749) (emphasis in original). We will overturn a district court's credibility determination where the credited testimony is unbelievable. See Ramirez-Chilel, 289 F.3d at 749 ("Therefore, in evaluating the factual version of events between the law enforcement officers and Ramirez-Chilel, we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'"). We, however, cannot conclude that it is exceedingly improbable or unbelievable that someone in Eugene's position would make these statements spontaneously. See Odili, 474 F.3d at 1261; Ramirez-Chilel, 289 F.3d at 749. Accordingly, we will not disturb the district court's credibility finding, and, therefore, we hold that the district court did not err in admitting these statements as spontaneous.

The district court also admitted evidence that, during the ride from the police

15

department to the federal detention center, Jules told a DEA agent, "you got me, I did it, what else am I gonna do?" The facts surrounding this statement are not in dispute. The district court found that Jules was read and invoked his Miranda rights at the time of this arrest. The agent testified that, over half way through the trip to the detention center, Jules began to laugh out loud to himself and he asked what Jules was laughing about. Jules then made the statement the district court admitted into evidence. Relying on United States v. Gonzales, 121 F.3d 928 (5th Cir. 1997), the district court found that the agent's query as to what Jules was laughing about was a normal, natural inquiry that did not rise to the level of an interrogation, and, therefore, Jules's response, which the court equated to a spontaneous statement, was admissible.

We have held that "[i]ncriminating statements made in the course of casual conversation are not products of a custodial interrogation." United States v. Satterfield, 743 F.2d 827, 849 (11th Cir. 1984). In Satterfield, the defendant and an FBI agent engaged in "'small talk' or 'casual conversation' about topics such as sports, a summer concert and DeKalb County" during the ride to the police station. Id. We upheld the admission of the defendant's statement during that conversation that he was not a mean person, but that he had too many people that got him into trouble. Id. In this case, Jules was seated in the front seat of the vehicle and there

is no evidence that the agent questioned Jules until after Jules began to laugh. The district court's finding that the agent's response to Jules's laughter was a normal and natural inquiry is not clearly erroneous, and we hold that, under the facts of this case, Jules's response to this question was admissible as it occurred during a casual conversation.

Jules also argues that the district court abused its discretion in denying a mistrial after the prosecutor described him as a "heavy-duty crack dealer." Jules and Eugene were tried with a third codefendant, Terrence Lee.[4] In the government's rebuttal closing argument, the prosecutor contended that charges were brought correctly against Lee, stating, "Did they check to see if there were links between Terrence Lee and Harold Jules? Because they know Harold Jules is a known heavy-duty crack dealer." Jules's objection was sustained and the district court granted his motion to strike. After the prosecutor concluded his rebuttal argument, Jules moved for a mistrial. The district court denied the motion, but gave a curative instruction.

Prosecutorial misconduct during closing argument requires a new trial only where the remarks were improper and prejudiced the defendant's substantive rights. United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998). In

---

[4] The jury acquitted Lee.

17

order to assess the prejudicial impact of the comments, we evaluate them in the context of the trial as a whole and assesses their probable impact on the jury. Id. "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome would be different." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995).

We conclude that the prosecutor's characterization of Jules as a "known heavy-duty crack dealer" was not improper. In United States v. Correa-Arroyave, 721 F.2d 792, 795 (11th Cir. 1983), we held that no prosecutorial misconduct occurred based on a reference in the government's opening statement to defendant as "'a big-time, high stakes, narcotics dealer here in Dade County,'" in a case involving 20 pounds of cocaine. We held that these comments "were merely a characterization of the evidence to be adduced at trial, subject, of course, to the jury's evaluation of the accuracy of the characterization." Id. (citations omitted). In United States v. Wilson, 149 F.3d 1298, 1300 (11th Cir. 1998), the defendant was indicted on one count of distribution of cocaine base after he sold one-half ounce (approximately 14 grams) of cocaine base to a confidential informant. The defendant raised a prosecutorial misconduct challenge to the prosecutor's references to him as a "'major'" drug dealer where he was charged with a single sale of a small amount of crack cocaine and also objected to improper inquiries

18

into his prior convictions.  Id. at 1300-01 & n.3, n.4.  We held that  "some of the pertinent remarks of the prosecutor were improper."  Id. at 1301 (footnote omitted); see also United States v. Blakey, 14 F.3d 1557, 1560 (11th Cir. 1994) (holding that a reference to the defendant as a professional criminal was improper where the comment "went outside the evidence, and impugned [the defendant's] character with an inaccurate characterization").

This case is more like Correa-Arroyave than Wilson, and, therefore, the description of Jules as a  "known heavy-duty crack dealer," was not improper. Here, there was evidence that Jules engaged in an 8.7 gram crack cocaine transaction on July 28, 2004, and a 5.1 gram crack cocaine transaction on September 1, 2004.  In addition, there was evidence that Jules sold crack cocaine to a cooperating witness on August 25, 2004, in exchange for $100.  There was also evidence that Jules sold drugs to a different cooperating witness's two friends in early July 2004, this cooperating witness made numerous drug purchases from both Eugene and Jules in addition to the undercover purchases she made for law enforcement, and Jules provided a third person crack cocaine for arranging a transaction between himself and this cooperating witness.  There was also evidence that, when Jules was arrested, he was in possession of $2,338 in cash in addition to the $500 from the undercover purchase leading to his arrest.

Even if we were to hold that this remark was improper, we would not hold that Jules's substantial rights were prejudicially affected by this single comment, as the district court struck the statement and gave the jury a curative instruction and there was substantial evidence of Jules's guilt.

In light of the foregoing, Eugene's and Jules's convictions are

**AFFIRMED.**