UNITED STATES of America,

v.

Anthony HICKS, Defendant.

Criminal No. 1:07–CR–325–1–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 10, 2008.

Anthony Hicks, pro se.

Richard Brooks Holcomb, Federal Defender Program, Inc., Atlanta, GA, for Defendant.

Jamila Marjani Hall, U:S. Attorney's Office, Atlanta, GA, for United States of America.

## ORDER

THOMAS W. THRASH, JR., District Judge.

This is a criminal action. It is before the Court on the Report and Recommendation [Doc. 23] of the Magistrate Judge recommending granting in part and denying in part the Defendant's Motion to Sup-

press [Doc. 21]. The Court approves and adopts the Report and Recommendation as the judgment of the Court. The Defendant's Motion to Suppress [Doc. 21] is GRANTED in part and DENIED in part.

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

RUSSELL G. VINEYARD, United States Magistrate Judge.

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Criminal Rule 58.1. Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within ten (10) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript of applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.1983).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(F), **the above-referenced ten (10) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** The Clerk is **DIRECTED** to submit the

Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED,** this 3rd day of March, 2008.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Anthony Hicks is charged with possessing a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1). [Doc. 1].[1] Hicks filed a preliminary motion to suppress, [Doc. 10], which he perfected as a motion to suppress statements, [Doc. 21].[2] Following an evidentiary hearing regarding this motion on November 26, 2007,[3] the parties filed posthearing briefs, [Docs. 18, 21, 22], and the motion is now ripe for ruling. For the following reasons, the undersigned Magistrate Judge **RECOMMENDS** that Hicks' motion to suppress, [Docs. 10, 21], be **GRANTED** in part and **DENIED** in part.

### I. STATEMENT OF FACTS

On May 4, 2005, Atlanta Police Department Sergeant Warren Pickard, the unit supervisor of Zone 1 Field Investigation Team, and Detective Raymond Layton, assigned to that team, were patrolling the neighborhood surrounding Dixie Hills Avenue in a marked vehicle. (Tr. at 4–5, 8, 13–14). Sergeant Pickard was driving; Detective Layton was in the passenger seat. (Tr. at 14). While on patrol, the officers observed defendant Anthony Hicks and another male sitting inside of a parked vehicle. (Tr. at 8, 16–17, 19). The officers observed the driver of that vehicle, later identified as Hicks, smoking what appeared to be a marijuana cigarette, commonly referred to as a "blunt." (Tr. at 8–9, 18–19, 21. *See also* Tr. at 12, 19). Sergeant Pickard slowed the police vehicle down, and the smell of burning marijuana was emanating from the parked vehicle. (Tr. at 8, 21). Sergeant Pickard stopped the police vehicle, and Detective Layton jumped out, approached the driver's side window of the parked vehicle, and identified himself as an Atlanta police officer. (Tr. at 9, 22–23). Hicks exited the vehicle and threw on the ground a "white cookie"[4] which appeared to be crack cocaine. (Tr. at 9, 23). Detective Layton detained Hicks when he saw him discard the suspected crack cocaine, while Sergeant Pickard removed the passenger from the other side of the vehicle. (Tr. at 9, 24). Detective Layton immediately recovered the "white cookie" from the ground, saw a marijuana cigarette sitting on the driver's seat, and placed Hicks under formal arrest on charges of possession of crack cocaine,

---

1. The indictment includes a forfeiture provision pursuant to 18 U.S.C. §§ 924(d) and 1963(m). [Doc. 1 at 2–3].

2. In his preliminary motion to suppress, Hicks challenged his initial arrest, the search of his person and vehicle, and any pre- and post-arrest interrogations conducted by law enforcement officers, seeking to suppress any products of the warrantless searches of his person and vehicle, any statements resulting from prearrest and post-arrest interrogations, and any fruits of these collective acts. [Doc. 10]. In his perfected motion to suppress, Hicks abandoned his preliminary challenges to the arrest and searches, and seeks only to suppress his post-arrest statements and any fruits of the alleged unconstitutional activity. [Doc. 21].

3. *See* Doc. 16 for the transcript of the evidentiary hearing. Citations to the evidentiary hearing transcript hereinafter will be referred to as "(Tr. at ——)."

4. A "cookie," according to Detective Layton, describes a larger-sized piece of crack cocaine. (Tr. at 23).

abandonment of dangerous drugs, and possession of marijuana. (Tr. at 9–10). Both Hicks and the passenger were taken to the rear of the vehicle, handcuffed, and seated on the curb. (Tr. at 10, 24–25).

Detective Layton went back to the driver's side of the suspects' vehicle and pulled a small bag of marijuana from the door. (Tr. at 10, 25). Upon further search of the vehicle, Detective Layton located a loaded black .38–caliber pistol in a black plastic bag. (*Id.*). Detective Layton pulled the pistol out of the vehicle and placed it on the trunk with the drugs he had recovered, upon which Hicks blurted out, "Man, that's mine. I can't let that man take my charge." (Tr. at 10–11). Detective Layton asked, "Is this your gun?," to which Hicks responded, "Yes." (Tr. at 10). Detective Layton inquired whether Hicks had a permit for the gun, and Hicks responded, "Na, I bought it off the street." (Tr. at 11). The officers then transported Hicks and his companion to the precinct, pulled up Hicks' criminal record, and discovered that he was a convicted felon. (*Id.*).

## II. DISCUSSION

■ Hicks moves to suppress the statements he made to Detective Layton on the sole basis that he was not advised of and did not waive his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. 1602. The advice of *Miranda* rights, however, is only required if a person is subject to custodial interrogation. *Garcia v. Singletary*, 13 F.3d 1487, 1489 (11th Cir.1994).

■ "Interrogation," as conceptualized in the *Miranda* sense, reflects a "measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. 1682 (footnotes omitted). "Because the underlying purpose of the *Miranda* rule is to dispel compulsion, the relevant inquiry in deciding whether words or actions constitute interrogation focuses 'primarily upon the perceptions of the suspect, rather than the intent of the police.'" *United States v. Rommy*, 506 F.3d 108, 132 (2d Cir.2007) (*quoting id.*, 446 U.S. at 301, 100 S.Ct. 1682).

■ "As *Miranda* itself recognized, however, '[v]olunteered statements of any kind are not barred by the Fifth Amendment' and, thus, do not require preliminary advice of rights." *Rommy*, 506 F.3d at 132 (*quoting Miranda*, 384 U.S. at 478, 86 S.Ct. 1602) (alteration in original). *See also Innis*, 446 U.S. at 300, 100 S.Ct. 1682; *United States v. Jules*, 244 Fed.Appx. 964, 972 (11th Cir.2007) (unpublished); *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir.1991); *United States v. Glen–Archila*, 677 F.2d 809, 814 (11th Cir.1982). Despite Hicks' argument to the contrary, his first statement, "Man, that's mine. I can't let that man take my charge," (Tr. at 10), is a volunteered, spontaneous statement which is not barred by *Miranda* because it was not made in response to interrogation or its functional equivalent.

Hicks argues that Detective Layton engaged in the functional equivalent of interrogation by placing the pistol on the trunk of the vehicle, and, on these grounds, his first statement must be suppressed. Nothing in the record, however, suggests that the manner in which Detective Layton recovered the pistol from the vehicle and placed it on the trunk with the other evidence was meant to or should have reasonably been expected to evoke an incriminating response from Hicks or his companion. The record indicates that Hicks was sitting on the curb near the rear of the vehicle and thus could see the pistol as it was placed on the trunk. Such evidence, however, does not suggest that Detective Layton was engaged in some sort of "psychological ploy" to extract a statement from Hicks or his companion. *Innis,* 446 U.S. at 301, 100 S.Ct. 1682. *See United States v. Quiocho,* No. 90–10217, 1991 WL 86873, *2 (9th Cir. May 13, 1991) (rejecting suspect's assertion that agents "showed" him the evidence in order to elicit a statement). *Cf. United States v. Glover,* 211 Fed.Appx. 811, 814 (10th Cir.2007) (unpublished) (admitting spontaneous statement made after being informed of grounds for arrest, holding that providing such information to a suspect "is prudent police practice and cannot objectively be construed as an attempt to elicit an incriminating response"). Lacking evidence that it was the product of interrogation or its functional equivalent, Hicks' first statement is not due to be suppressed. *United States v. Cary,* No. 1:07–cv–74–WSD, 2008 WL 80650, *6 (N.D.Ga. Jan. 4, 2008).

■ Hicks' other statements, i.e., affirmations that the pistol was his and purchased off the street without a permit, require further scrutiny because Hicks was responding to direct questions posed to him by Detective Layton. Not all follow-up questions to volunteered statements, however, implicate *Miranda.* "[W]here a person in custody volunteers incriminating information to the police, simple clarifying questions do not necessarily constitute interrogation," necessitating fresh or first-time *Miranda* warnings. *Rommy,* 506 F.3d at 133 (collecting cases). *See e.g., Tolliver v. Sheets,* 530 F.Supp.2d 957, 990 (S.D.Ohio 2008) (finding officer's follow-up question, "[i]t's all her blood?," in response to the suspect's statement, "it's all hers," permissible without preceding *Miranda* warnings); *United States v. Gonzales,* 121 F.3d 928, 940 (5th Cir.1997) (admitting clarifying statement where suspect voluntarily claimed, "all of that is mine," referring to recovered drugs and a weapon, and officer asked for clarification); *Andersen v. Thieret,* 903 F.2d 526, 532 (7th Cir.1990) (admitting response when, after suspect's volunteered statement, "I stabbed her," police asked, "Who?"); *United States v. Rhodes,* 779 F.2d 1019, 1032 (4th Cir.1985) (admitting reply where, in response to suspect's volunteered statement, "You can't take that," police asked why). *But see United States v. Crowder,* 62 F.3d 782, 785–86 (6th Cir.1995) (holding that officer interrogated suspect when he sought additional information about the location of a gun after the suspect stated that gun was "in the wood").

The relevant inquiry is whether the suspect would have reasonably understood the follow-up questions to be seeking only clarifying information already volunteered or, rather, looking to compel further incriminating responses. *Rommy,* 506 F.3d at 133. As the Second Circuit has explained,

[A]bsent extraordinary circumstances, a court may generally conclude that follow-up questions asking only for volun-

teered information to be repeated or spelled do not constitute interrogation. The same conclusion might also easily apply to discrete questions seeking confirmation of what appears implicit in the volunteered disclosure. But where questions seek to "expand the scope" of volunteered statements, a more searching inquiry may be necessary to determine whether they have moved beyond neutral clarification to interrogation. LaFave et al., 2 Criminal Procedure § 6.7(d), at 566–67 (suggesting that defendant's statement given after follow-up questions is appropriately deemed "volunteered only if the questions are neutral efforts to clarify what has already been said rather than apparent attempts to expand the scope of the statement previously made").

*Id.* at 133–34 (footnote omitted).

■ Here, Detective Layton's follow-up questions must be treated differently. His first inquiry, i.e., "Is this your gun?," simply asked Hicks to repeat his preceding assertion that the pistol was his. Accordingly, it did not constitute "interrogation" requiring *Miranda* warnings. Hicks's affirmative response to this question, then, is not subject to suppression. *See id.* at 133. *Cf. United States v. Laughlin,* 772 F.2d 1382, 1386–87 (7th Cir.1985) (finding harmless any error resulting from the admission of responses to questions which were "essentially duplicative" of a previous statement which was admissible).

■ Detective Layton's inquiry into whether Hicks had a gun permit, however,

expanded the scope of Hicks' original statement, moving "beyond neutral clarification to interrogation." *Rommy,* 506 F.3d at 133. The government argues that Detective Layton's questions, including this one, constituted routine, booking questions, analogous to those found admissible in *United States v. Gaston,* 357 F.3d 77, 82 (D.C.Cir.2004). Based on the record, it is not apparent that Detective Layton was attempting to fulfill some "administrative concern" of the type exempted by *Miranda. See, e.g., Pennsylvania v. Muniz,* 496 U.S. 582, 601–02, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990); *Gaston,* 357 F.3d at 82 (excepting from *Miranda* an officer's inquiry into the suspect's ownership interest in property searched as a "record-keeping" task allowable in connection with Federal Rule of Criminal Procedure 41(f)(3)(A) which required service of the warrant on the owner of the property). Indeed, the government offers no administrative function which Detective Layton's inquiry might have served. Rather, Detective Layton's testimony suggests that he asked Hicks this question to determine whether he was in lawful possession of the gun. (Tr. at 11). In doing so, Detective Layton sought to expand the scope beyond ownership and asked a question which was reasonably likely to elicit a further incriminating response. *Innis,* 446 U.S. at 300, 100 S.Ct. 1682. Accordingly, Hicks' statement that he lacked a permit for the gun and bought it off the street should be suppressed.[5] *See United States v. Asberry,* No. 5:06 CR 330, 2007 WL 781475, *5 (N.D.Ohio Mar. 12, 2007) (suppressing de-

---

5. As noted earlier, defendant seeks suppression of fruits gathered as a result of any *Miranda* violation, [Doc. 21 at 1, 7], but the pistol, crack cocaine, and marijuana were all recovered prior to Hicks making any statements. Moreover, defendant has not specified any other fruit of this particular state-

ment that he contends should be suppressed, and, in any event, physical evidence obtained as a result of a voluntary, unwarned statement is admissible. *United States v. Patane,* 542 U.S. 630, 636, 643, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality); *United States*

fendant's statement in response to officer's question about whether he had a permit to carry a concealed weapon).

### III. CONCLUSION

For the foregoing reasons and cited authority, the undersigned Magistrate Judge **RECOMMENDS** that Hicks's motion to suppress, [Docs. 10, 21], be **GRANTED** in part and **DENIED** in part. There are no other motions pending before the undersigned, and the undersigned is aware of no problems relating to the scheduling of this case.

*v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007).

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED,** this 3rd day of March, 2008.